STATE OF NORTH CAROLINA v. CAREY PRESTON ROZIER AND HAROLD
DEAN CARTER

No. 8316SC528

(Filed 19 June 1984)

1. Narcotics § 2— indictment charging sale or delivery—no fatal defect

    Indictments charging the sale or delivery of cocaine were not fatally
defective because of the use of the disjunctive.

2. Narcotics § 2— failure of indictment to specify form of trafficking—no fatal
defect

    An indictment charging conspiracy to traffic in cocaine was not fatally
defective because it failed to specify which form of trafficking defendant con-
spired to commit, and defendant's failure to request a bill of particulars
precluded defendant from raising the issue on appeal.

3. Narcotics § 4.3— possession of cocaine—sufficiency of evidence

    The State's evidence was sufficient to support one defendant's convictions
of possession of cocaine with intent to sell or deliver on two separate dates
where it tended to show that defendant admitted that the trailer where the co-
caine sales occurred was his and that he was there when the State's evidence
showed that the transactions occurred, that defendant had used and dis-
tributed cocaine in the past, and that defendant knew of the transactions in
question through telephone and personal conversations with an accomplice.
The State's evidence was also sufficient to support conviction of a second de-

State v. Rozier

fendant on the same charges where there was eyewitness testimony that he personally handed cocaine to the accomplice on one date and that he directed another person to turn over the cocaine to the accomplice on a second date.

**4. Narcotics § 1.3— conspiracy to traffic in cocaine—amount of contraband agreed upon**

The amount of contraband agreed upon, not the amount actually delivered, is determinative in a narcotics conspiracy case. Therefore, defendant could be convicted of conspiracy to traffic in cocaine where the evidence showed an agreement to sell more than 28 grams although less than 28 grams was actually delivered. G.S. 90-95(h)(3), (i).

**5. Narcotics § 4— conspiracy to traffic in cocaine—sufficiency of evidence**

The State's evidence was sufficient to support conviction of one defendant of conspiracy to traffic in cocaine where it tended to show a conversation between defendant and an accomplice during which the sale of one ounce of cocaine was agreed upon. The State's evidence was sufficient to support conviction of a second defendant on the same charge where it tended to show that both defendants were regular companions and both had access to narcotics; the second defendant relayed messages concerning the cocaine transactions to the first defendant and twice accompanied the first defendant to the meeting place; and the second defendant was physically present when the cocaine was exchanged for cash in his home.

**6. Narcotics § 4.2— sale to undercover agent through accomplice—knowledge by defendants**

The State's evidence was sufficient to support a finding that both defendants knew that a sale of cocaine was being made through an accomplice to the undercover agent named in the indictment where it tended to show that the accomplice informed the first defendant during the negotiations that she was buying for another person and that the person named in the indictment was such other person, and where the evidence also tended to show that the second defendant accompanied the first defendant to a meeting with the accomplice and the undercover agent, rode with the first defendant and the accomplice to and from a place where the sale occurred, and was present when the first defendant told the accomplice that the deal would be cancelled if the person for whom she was buying the cocaine didn't like it.

**7. Conspiracy § 6; Narcotics § 4— two sales of narcotics—conviction of only single conspiracy**

The State's evidence showed only a single conspiracy to supply cocaine, and defendants could not be convicted of two separate conspiracies involving sales of cocaine on 9 June and 15 June 1982, where an undercover agent originally requested through an accomplice to purchase four ounces of cocaine from defendants; one defendant advised the accomplice that the first sale would only be one ounce, and such sale occurred on 9 June; when the cocaine turned up short, the accomplice told the agent that the difference would be made up the next time; several days later one defendant advised the accomplice that he was ready to go ahead with the four ounces; and such sale occurred on 15 June.

**8. Narcotics § 4— possession of cocaine sold to officer—possession of cocaine in vials—separate convictions**

Defendants could properly be convicted of both felonious possession of cocaine sold to an undercover agent and misdemeanor possession of small amounts of cocaine found shortly thereafter in vials for personal use where the transfer of the large amount of cocaine to the undercover agent was entirely completed when the vials with cocaine residue were found.

**9. Criminal Law § 34.6— evidence of other crimes—competency to show guilty knowledge**

Evidence of defendants' prior distribution of illicit drugs was competent in a prosecution for various narcotics charges to show guilty knowledge.

**10. Criminal Law § 92.1— consolidation of charges against two defendants**

The trial court did not err in consolidating for trial various narcotics charges against two defendants where the charges arose from the same criminal activity, neither defendant offered a defense antagonistic to the other, and no specific evidence was pointed out that was improperly included or excluded as a result of consolidation.

**11. Criminal Law § 92.5— refusal to sever charges against two defendants**

The trial court did not abuse its discretion in refusing to sever narcotics charges against two defendants, although there were numerous charges in the case, where the transactions on which they were based were fairly simple and involved a limited number of persons and a limited period of time. G.S. 15A-927(b)(2).

**12. Criminal Law § 102.6— improper jury argument—error cured by instructions**

Any impropriety in the prosecutor's jury argument characterizing a question posed by defense counsel as "slick" was cured when the trial court sustained defendants' objection thereto and instructed the jury to disregard such comment.

**13. Criminal Law § 102.9— jury arguments characterizing defendants as "the devil"**

The prosecutor's jury argument that "I've heard it said that if you want to try the devil you have to go to hell to get your witnesses" did not constitute reversible error when considered in context.

**14. Criminal Law § 102.6— narcotics case—jury argument concerning curiosity of children**

In a prosecution upon various narcotics charges, the trial court did not abuse its discretion in overruling defendants' objection to the prosecutor's jury argument that children are naturally curious and that in the drug world, there are those who would play upon that natural curiosity.

**15. Criminal Law § 102.12— improper jury argument—error cured by curative instructions**

In a prosecution upon various narcotics charges, the trial court's curative instructions rendered harmless any impropriety in the prosecutor's jury argument in which he stated that "there's maybe a higher law" than the court's,

read a verse from the Bible stating, "If any man defile the temple of God, him shall God destroy," and noted that there was no death penalty in the case but that the jury could insure that defendants would be out of the drug business for a long time.

**16. Criminal Law § 117.4— instruction on accomplice's testimony given in substance**

The trial court in substance gave defendants' requested instruction on accomplice testimony where the court instructed the jury that the accomplice was charged with the same criminal offenses as defendants, had entered pleas of guilty, and was considered by the law to have an interest in the outcome of the trial, and where the court then gave the appropriate instruction on the scrutiny to be given the testimony of interested witnesses.

**17. Criminal Law § 138— sentencing—aggravating and mitigating factors—failure to make findings as to each offense—harmless error**

The trial court erred in failing to make separate findings as to aggravating and mitigating factors for each offense, but such error was not prejudicial where the court could have imposed sentences totaling thirteen years for the offenses in question without finding any aggravating factors but imposed a consolidated sentence of only ten years.

**18. Criminal Law § 138— mitigating factor—only passive participant—insufficient evidence**

The trial court did not err in failing to find as a mitigating factor that one defendant was only a passive participant in various narcotics offenses where there was evidence that such defendant knowingly served as the second defendant's messenger in narcotics transactions, that such defendant allowed his house to be used and was present at narcotics transactions, and that such defendant was ready to join in armed pursuit of an undercover agent who left with narcotics without paying for them.

APPEAL by defendants from *Martin, John C., Judge.* Judgments entered 5 November 1982 in Superior Court, ROBESON County. Heard in the Court of Appeals 8 December 1983.

Defendants were tried jointly and convicted on numerous drug and concealed weapon charges. The charges arose from two separate transactions with undercover police officers.

The State's evidence, relying heavily on an accomplice's testimony, tended to show the following: Police obtained the name of the accomplice, who worked at a nightclub in Fayetteville, from a confidential informant. An officer approached her posing as a person interested in purchasing large amounts of cocaine. The accomplice agreed to help arrange a transaction for the purchase of four ounces of cocaine. The accomplice testified that

defendants had frequently visited her at her places of employment, and had shared their cocaine and other drugs with her. She testified that she contacted defendant Carter, asking him to contact defendant Rozier. At a meeting Rozier advised the accomplice that the first sale would be only one ounce. Price and other details were worked out by phone with Carter and the accomplice as go-betweens. On 9 June 1982, the undercover agent drove with the accomplice to a location near Lumberton. Both defendants drove up in Rozier's truck, picked up the accomplice, and drove to Carter's trailer in rural Robeson County. There the money and cocaine were exchanged, and the accomplice was brought back to the meeting place. The agent expressed his satisfaction with the drugs; they actually weighed 27.71 grams.

Shortly thereafter, similar arrangements were made for the purchase of four ounces of cocaine. Again, price and meeting place were negotiated with defendant Carter and the accomplice as go-betweens. Because of the large amounts of money and drugs involved, the agent demanded that he be allowed to go to the scene of the transaction. Defendants agreed that he could come to the trailer but would remain in his car. At the last minute defendants offered to sell five instead of four ounces of cocaine, and the agent agreed. On 15 June 1982, the agent and the accomplice drove to Carter's trailer; state and local officers had been alerted to move in as soon as the deal was complete. The accomplice went inside while the agent waited. She testified that only Carter was present, but he said that Rozier was to arrive shortly. The accomplice went back out to the car to tell the agent of the delay, then returned to the trailer. Rozier and a third person, Kinlaw, arrived soon afterwards. Rozier instructed the accomplice to go into a bedroom with Kinlaw, where Kinlaw gave her a bag containing about five ounces of a mixture containing about 30% cocaine. The accomplice came out of the bedroom and told Rozier that her buyer would have to check the drugs before he gave defendants the money, and then went out to the car. The accomplice got in, and the agent started the car and drove off at high speed. Defendants Rozier and Carter ran out and started after the agent in their truck; as they reached the road the waiting officers converged and arrested them. A search incident to the arrest revealed the following: a .25 caliber automatic pistol and a vial containing cocaine residue on defendant Carter's per-

son; and two vials, one of which contained cocaine residue, and a .32 caliber pistol in the console and glove compartment of the truck. Two bags of marijuana and various drug paraphernalia were found in a consent search of the trailer. Kinlaw was arrested in the trailer; his trial was severed from defendants'. The accomplice was also arrested; she entered pleas of guilty to the various charges against her.

Defendants' evidence tended to show that they had no knowledge of the cocaine transactions. Both admitted that they used cocaine, but that they did not sell it. Their evidence showed that the accomplice dealt only with one Don Autry, a friend of theirs with whom she was having an affair. Defendants had picked up the accomplice on several occasions and brought her to motels where Autry was staying. Defendants allowed Autry to use their phones, and Carter relayed messages from the accomplice to Autry, not Rozier. On both occasions when the alleged cocaine transactions took place, the accomplice went into a bedroom alone with Autry. Neither defendant saw any cocaine or money change hands. When the accomplice went out with the drugs on 15 June, Autry yelled that the law was outside and ran out the door and into the woods. Defendants Rozier and Carter were leaving to escape arrest for possession of the small amounts of cocaine in the vials when arrested.

The State vigorously contested Autry's role and his very existence. Defendants presented testimony from other witnesses who had seen Autry, but no direct evidence of his presence or existence. They also presented evidence that the accomplice continued to be involved with cocaine traffic and prostitution.

The jury found defendants guilty on all charges as follows (with the date of the offense in parentheses):

Defendant Rozier

Case 82CRS9742—felonious conspiracy to traffic in cocaine (9 June 1982);

Case 82CRS9744—Count 1, felonious possession of cocaine with intent to sell or deliver, and Count 2, felonious sale or delivery of cocaine (9 June 1982);

Case 82CRS9743—felonious conspiracy to traffic in cocaine (15 June 1982);

Case 82CRS9740—felonious trafficking in cocaine (15 June 1982);

Case 82CRS9741—misdemeanor possession of cocaine (15 June 1982); and

Case 82CRS9911—misdemeanor carrying of a concealed weapon (15 June 1982).

Defendant Carter

Case 82CRS9747—felonious conspiracy to traffic in cocaine (9 June 1982);

Case 82CRS9745—Count 1, felonious possession of cocaine with intent to sell or deliver, and Count 2, felonious sale or delivery of cocaine (9 June 1982);

Case 82CRS9749—felonious conspiracy to traffic in cocaine (15 June 1982);

Case 82CRS9748—felonious trafficking in cocaine (15 June 1982);

Case 82CRS9750—misdemeanor possession of cocaine (15 June 1982);

Case 82CRS9746—misdemeanor possession of marijuana (15 June 1982); and

Case 82CRS9926—misdemeanor carrying of a concealed weapon (15 June 1982).

Both defendants were sentenced to terms in excess of the presumptive and fined. Both appeal.

*Attorney General Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant Carter.*

*Regan and Regan, by John C. B. Regan III, for defendant appellant Rozier.*

JOHNSON, Judge.

Defendant Rozier has adopted the brief of defendant Carter. Therefore, the two defendants' appeals are treated herein as one, except where defendant Carter has raised questions pertinent only to his own appeal.

I

Certain of the indictments charged sale *or* delivery of cocaine, and conspiracy to sell *or* deliver. The conspiracy indictment against defendant Carter arising out of the 15 June 1982 transactions charged only "trafficking," without specifying which specific form of trafficking Carter conspired to commit. These deficiencies, contend defendants, rendered the indictments fatally defective and therefore the court erred in denying their motions to quash.

A

[1]    G.S. 90-95(a)(1) provides that it is unlawful for any person "To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance," including cocaine. Sale and delivery are separate offenses. *State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976). Ordinarily, an indictment which charges separate offenses in the alternative is defective and defendants may properly move to quash or compel the State to make an election. Defendants moved to quash because of the above duplicity and their motions were denied.

The rule against disjunctive pleading is not absolute, however. *State v. Jones*, 242 N.C. 563, 89 S.E. 2d 129 (1955), provides an apt example. There, defendant challenged an indictment as duplicitous which alleged that he "did unlawfully and wilfully build *or* install a septic tank" (emphasis supplied) without first obtaining a permit. The Court held that the terms "build" and "install" were synonymous and the disjunctive pleading was therefore irrelevant. Even if the words were not synonymous, held the Court, the gist of the offense lay not in the manner in which the tank reached completion, but in defendant's failure to obtain a permit, and therefore no prejudice could result. *Id.* at 565, 89 S.E. 2d at 131. Here, the only difference between "sell" and "deliver" is the fact that money changes hands in a sale. The gist of both offenses, the act which the General Assembly intend-

ed to punish, is the transfer of controlled substances. The statutes define trafficking offenses in terms of the amount of illicit drugs involved, not the amount of money. Defendants were clearly on notice which transfers were the subject of the indictments.

> [I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.

*State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E. 2d 719, 731 (1981). Therefore, we hold that the indictments charging "sale or delivery" were not fatally defective and that the court did not abuse its discretion in denying defendants' motions to quash. *Id.*; *State v. Jones, supra.*

B

[2]  The conspiracy to traffic indictment against Carter based on the transaction of 15 June 1982, case number 82CRS9749, presents a similar question. The indictment, tracking the statute, charged the single felony of trafficking. *See* G.S. 90-95(h)(3). However, trafficking may be committed in various ways; one who "sells, manufactures, delivers, transports, or possesses" more than the statutory minimum has committed the offense. *Id.* These are separate offenses. *State v. Anderson*, 57 N.C. App. 602, 292 S.E. 2d 163, *disc. review denied*, 306 N.C. 559, 294 S.E. 2d 372 (1982). The failure to specify which denounced act was conspired to renders the indictment fatally defective, argues Carter.

Before trial Rozier moved to quash the parallel indictment against him, which charged a conspiracy to sell or deliver. The motion was grounded on the alleged duplicity; Carter joined in the motion, even though the indictment against him did not include the language complained of. He did not raise the omission orally. It is well established that failure to move to quash waives the defect in the indictment. *See e.g. State v. Turner*, 8 N.C. App. 541, 174 S.E. 2d 863 (1970). By failing to move to quash for the alleged omission defendant Carter waived the defect; moreover, by joining in defendant Rozier's motion he admitted that he in fact had notice of the nature of the charge against him.

The Supreme Court has routinely held that indictments simply charging murder with malice aforethought suffice to support felony-murder convictions, and that defendants desiring more information must exercise their right to request a bill of particulars. *See* G.S. 15A-925; *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Mays*, 225 N.C. 486, 35 S.E. 2d 494 (1945). This Court has held that a defendant charged with failing to disperse could not complain of the failure of the charging document to disclose the underlying disorderly conduct where no bill was requested. *State v. Clark*, 22 N.C. App. 81, 206 S.E. 2d 252, *appeal dismissed*, 285 N.C. 760, 208 S.E. 2d 380 (1974), *cert. denied*, 420 U.S. 977, 43 L.Ed. 2d 658, 95 S.Ct. 1403 (1975). Assuming *arguendo* that Carter had not otherwise waived the defect, his failure to request a bill of particulars to an indictment which clearly informed him of the felony charged precludes him from raising the omission here. *Id.; State v. Swift, supra; see generally* 41 Am. Jur. 2d, Indictments and Informations § 303 (1968). This assignment is overruled.

II

Defendants, particularly Carter, contend that the evidence against them did not suffice to go to the jury on the felony charges. It is elementary that there must be substantial evidence of all material elements of the offenses charged for the case to reach the jury. *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982). In applying this test,

> [t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court. . . .

*State v. Powell*, 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). "In addition to producing substantial evidence of each of the material elements of the particular offense, the State must produce substantial evidence that the defendant committed it." *State v. LeDuc, supra* at 75, 291 S.E. 2d at 615. If the evidence suffices only to raise a suspicion or conjecture that defendant committed the offense, it is insufficient. *Id.*

A

[3] Defendant Carter contends that the evidence did not suffice to support his convictions of possession of cocaine with intent to sell or deliver on either 9 June or 15 June 1982. Carter admitted that the trailer where the deals took place was his and admitted that he was there when the State's evidence showed the transactions to have occurred. The State presented evidence that Carter had used and distributed cocaine in the past and knew of the subject transactions, by telephone conversations and conversation with the accomplice in person. In *State v. Tate and State v. Tate*, 58 N.C. App. 494, 294 S.E. 2d 16 (1982), *aff'd*, 307 N.C. 464, 298 S.E. 2d 386 (1983) (per curiam), this Court ruled that similar evidence sufficed to support a possession conviction. There, narcotics were found in an apartment rented by defendant and apparently used by his sister in her dealing operations. Following *Tate*, there was sufficient evidence here for the jury to conclude that Carter at least constructively possessed the cocaine involved. *See also United States v. DeLeon*, 641 F. 2d 330 (5th Cir. 1981) (various otherwise inconclusive circumstances combined to permit inference of possession); *Cleveland v. State*, 155 Ga. App. 267, 270 S.E. 2d 687 (1980) (husband constructively possessed drugs found with wife, owner of house, and another in closed room). *Compare United States v. Williams*, 569 F. 2d 823 (5th Cir. 1978) (owner not criminally liable for allowing others to use his property when he does not know of their criminal purpose).

Defendant Rozier was also convicted of two charges of possession. There was eyewitness testimony (1) that he personally handed the cocaine to the accomplice on 9 June 1982 and (2) that he directed Kinlaw to turn over the cocaine to the accomplice on 15 June 1982. This sufficed to take these cases to the jury. *State v. Lofton*, 42 N.C. App. 168, 256 S.E. 2d 272 (1979).

B

[4] The amount of cocaine which actually changed hands on 9 June 1982 was 27.71 grams, although the amount agreed on was an ounce (an ounce equals 28.349 grams). The minimum amount which will support a trafficking conviction is 28 grams. G.S. 90-95(h)(3). Therefore, argue defendants, the evidence did not support their convictions for trafficking on 9 June 1982; they contend

State v. Rozier

that the State improperly used the conspiracy indictment for a chance at the mandatory seven-year sentence for trafficking.

A criminal conspiracy is an agreement by two or more persons to perform an unlawful act or to perform a lawful act in an unlawful manner. *State v. Hammette*, 58 N.C. App. 587, 293 S.E. 2d 824 (1982). It is a separate crime from the underlying substantive offense. *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980). The crime is complete once the agreement has been reached; no overt act is necessary to establish criminal liability. *State v. Christopher*, 307 N.C. 645, 300 S.E. 2d 381 (1983). Once a criminal conspiracy has been proven, punishment is according to the law governing the conspiracy, not the substantive offense. *State v. Puryear*, 30 N.C. App. 719, 228 S.E. 2d 536, *disc. review denied and appeal dismissed*, 291 N.C. 325, 230 S.E. 2d 678 (1976). The penalty for conspiracy to traffic in controlled substances is the same as for the substantive offense of trafficking. G.S. 90-95(i). Applying the foregoing principles, we hold that it is the amount of contraband agreed upon, not the amount actually delivered, which is determinative in a narcotics conspiracy case. Defendants apparently contend that since "there is no honor among thieves," they should only be punished for what they actually delivered, not their criminal agreement. The legislative recognition of the crime of conspiracy to traffic implicit in G.S. 90-95(i), and the General Assembly's insistence on enhanced punishment for that crime, belie this argument. If the evidence showed an *agreement* to deliver more than the statutory minimum, that agreement will control.

[5] As to defendant Rozier, the evidence clearly sufficed to prove a conspiracy to traffic in cocaine on or about 9 June 1982. The State's evidence showed a series of conversations between Rozier and the accomplice during which the sale of the one ounce amount, sufficient to support the conviction, was agreed upon. That alone sufficed to reach the jury.

As to defendant Carter, the evidence was not as strong but still sufficient. Circumstantial evidence may be used to show a conspiracy. *State v. LeDuc, supra.* Conspiracy "may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." 306

N.C. at 76, 291 S.E. 2d at 616, *quoting State v. Whiteside,* 204 N.C. 710, 712, 169 S.E. 711, 712 (1933). It is not necessary that the individual charged expressly state his willingness to participate; a mutual, implied understanding is sufficient. *Id.* The State presented evidence that Carter and Rozier were regular companions and that both had access to narcotics, that Carter relayed messages concerning the subject cocaine transactions to Rozier, that Carter twice accompanied Rozier to the meeting place on 9 June 1982, and that Carter was physically present when the cocaine was exchanged for cash in his home. This sufficed to allow the question of his participation in *a* drug conspiracy to go to the jury. The State established *prima facie* Rozier's and Carter's involvement in the conspiracy, and therefore Rozier's statements regarding the amount of narcotics became admissible against Carter *as evidence* of conspiracy *to traffic. State v. Small, supra.* The conviction of defendant Carter for conspiracy to traffic involving the 9 June 1982 transaction is thus supported by sufficient evidence.

C

[6] Defendants challenge the sufficiency of the evidence to prove sale and delivery on 9 June 1982 to the undercover agent named in the indictment. As to Rozier, this contention is totally without merit, since there is ample evidence that the accomplice informed him that she was buying for another person during the course of the negotiations, and that the person named in the indictment was that other person. As to Carter, the evidence again is not quite as strong. He contends that the accomplice was the only person to whom the evidence showed he knew cocaine was sold, and that this fact created a fatal variance between the indictment and the proof, relying on *State v. Sealey,* 41 N.C. App. 175, 254 S.E. 2d 238 (1979). No evidence that Carter was directly informed of the accomplice's agency appears in the record.

Knowledge may be proven by circumstantial evidence, however. *State v. Foster,* 293 N.C. 674, 239 S.E. 2d 449 (1977) is directly on point: there it was held that defendant's presence at the robbery and his earlier presence in a car where co-defendants discussed the crime were competent to prove knowledge of the criminal plan. Here, there was eyewitness testimony by the agent that defendant Carter accompanied defendant Rozier and the ac-

complice both from the meeting place and back to it after the exchange had taken place on 9 June 1982. The three sat in close proximity in the front seat of a pickup truck. There was also evidence that Rozier told the accomplice before she got out that she should have her contact "look at it and if who I [the accomplice] was buying for didn't like the coke to stay there" and the deal could be cancelled. There was plenary evidence that the person named in the indictment was the agent waiting at the meeting place. This evidence sufficed to go to the jury on the issue of Carter's knowledge. *State v. Foster, supra.*

## D

As a final catch-all, Carter challenges the sufficiency of the State's evidence generally. He argues that the State showed only his presence at the scene of these crimes, and that a "shadow" does not a criminal accomplice make. The State's case against Carter was largely circumstantial. It is no longer necessary, however, that circumstantial evidence exclude every reasonable hypothesis of innocence to withstand a motion to dismiss. *State v. Jones,* 303 N.C. 500, 279 S.E. 2d 835 (1981). The evidence must give rise to a reasonable inference of guilt; then it is for the jury to decide whether that evidence satisfies them beyond a reasonable doubt of defendant's guilt. *Id.*

It is true that mere presence at the scene of the crime does not make a defendant a principal thereto, even though he makes no effort to stop the crime or secretly approves or intends to encourage it. *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169 (1965). Such is not the case here. The State presented evidence that Carter had an established relationship with Rozier, that both had had access to and distributed narcotics, that Carter knowingly served as a messenger in the purchase negotiations, that he allowed his home to be used as the place of business, that he twice accompanied defendant Rozier to the meeting place on 9 June 1982 with knowledge of the purpose of the meeting, that he joined defendant Rozier in armed pursuit of the agent and the accomplice on 15 June 1982, *and* that he was present during both transfers. This evidence clearly goes beyond *Bruton, supra,* and sufficed to go to the jury on all issues. *See State v. Beasley,* 3 N.C. App. 323, 164 S.E. 2d 742 (1968) (standing by to render aid and preventing aid to victim sufficient). We conclude that defend-

ants' motions to dismiss for insufficient evidence were properly denied.

## III

[7]  Defendants contend that they could not be convicted of two separate conspiracies, one involving the transactions of 9 June 1982 and the other the transaction of 15 June 1982. They argue that there was at most a single conspiracy directed toward a single continuous result, *i.e.*, the fulfillment of the original request for four ounces of cocaine. The State contends that the criminal purpose of the first agreement was completed and that thereafter, when the agent renewed contact, a new criminal agreement involving further negotiations had to be worked out.

It is well established that the gist of the crime of conspiracy is the agreement itself, not the commission of the substantive crime. *See e.g. State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978); *see also Braverman v. United States*, 317 U.S. 49, 87 L.Ed. 23, 63 S.Ct. 99 (1942). It is also clear that where a series of agreements or acts constitutes a *single* conspiracy, a defendant cannot be subjected to multiple indictments consistently with the constitutional guarantee against double jeopardy. *United States v. Kissel*, 218 U.S. 601, 54 L.Ed. 1168, 31 S.Ct. 124 (1910). Defining the scope of a conspiracy or conspiracies remains a thorny problem for the courts. This Court has affirmed multiple conspiracy convictions arising from multiple substantive narcotics offenses involving a single amount of drugs found on a single occasion, *State v. Sanderson*, 60 N.C. App. 604, 300 S.E. 2d 9, *disc. review denied*, 308 N.C. 679, 304 S.E. 2d 759 (1983), apparently on the theory that each conspiracy involved separate elements of proof, and represented a separate agreement. However, under North Carolina law multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies. *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1963), *appeal dismissed*, 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed. 2d 40 (1963) (per curiam). There is no simple test for determining whether single or multiple conspiracies are involved: the essential question is the nature of the agreement or agreements, *Braverman v. United States, supra*, but factors such as time intervals, participants, objectives, and number of meetings all must be considered.

It is only proper that the State, having elected to charge separate conspiracies, must prove not only the existence of at least two agreements but also that they were separate. *See Commonwealth v. Cerveny*, 387 Mass. 280, 439 N.E. 2d 754 (1982). The State contends that the evidence showed that the original agreement ended with the completed sale of 9 June 1982, and thereafter a new agreement had to be worked out, culminating in a new confederation and the second sale on 15 June 1982.

However, the State's own witnesses testified that the original request was for the larger amount of cocaine. The accomplice met with Rozier who told her that "the first time he would only sell [her] one ounce instead of four." When the cocaine turned up short on 9 June 1982, the accomplice (a co-conspirator) told the agent the difference would be made up next time. Rozier returned from a trip several days later and called the accomplice and told her he was ready to go ahead with the four ounces. The agent himself testified that he originally asked for four ounces. He maintained daily contact with the accomplice. Only six days separated the two transactions, which involved virtually the same parties. It is clear that this evidence showed only a single conspiracy to supply cocaine to the agent, and that the State has failed to show multiple conspiracies.

The decisions of other jurisdictions support this conclusion. In *Commonwealth v. Cerveny, supra*, the same group of defendants submitted falsified forms in consecutive years to a state agency. The court held that the identity of the parties, objectives and means refuted the Commonwealth's contention that multiple forms submitted in individual years (over 4 or 5 day periods) supported multiple conspiracy convictions, but that the significant time intervals permitted the conclusion that separate conspiracy convictions were supported by each year's separate filings. In a case remarkably similar to the one at bar, *People v. Nunez*, 90 Misc. 2d 630, 395 N.Y.S. 2d 360 (1977), defendants arranged two transactions to sell cocaine to undercover police over an eight-day period, the first a "test" sale of one-eighth kilogram, followed by a full kilogram. The court held that defendants could not be convicted of two conspiracies, since the original agreement established the buyer-seller relationship which was the single intent of the conspiracy.

Ordinarily, the existence of a conspiracy is a question for the jury. *State v. Conrad*, 4 N.C. App. 50, 165 S.E. 2d 771, *affirmed in relevant part*, 275 N.C. 342, 168 S.E. 2d 39 (1969). It follows then, that whether multiple agreements constitute a single conspiracy or multiple conspiracies is also a question of fact for the jury. Here, however, the State obtained separate conspiracy indictments and the court instructed accordingly. The jury was not presented with the choice of finding a single conspiracy. It did, however, find defendants guilty on both conspiracy counts, which is tantamount in this case to finding them guilty of the single larger conspiracy presented by the evidence. Since the conspiracy began on or about 9 June 1982, the earlier of the conspiracy convictions should stand, and the convictions for conspiracy based on the transactions of 15 June 1982, cases 82CRS9743 (Rozier) and 82CRS9749 (Carter), must be vacated. However, because the cases were consolidated for judgment with the substantive trafficking cases based on the 15 June 1982 transactions, defendants' sentences are not affected.

## IV

[8] Both defendants were convicted not only of felonious possession of the cocaine sold to police on 15 June 1982, but also of misdemeanor possession of small amounts of cocaine. These were found during the search indictment to arrest on 15 June 1982; one vial containing cocaine residue was found on Carter's person and another in Rozier's truck. Defendants contend that these misdemeanor convictions violate their rights not to be subjected to double jeopardy, since misdemeanor possession is a lesser included offense of felonious possession, and possession of the two differing amounts of cocaine constituted a single continuing offense.

No North Carolina case has directly addressed this problem. In *State v. Shaw*, 28 N.C. App. 207, 220 S.E. 2d 634 (1975), this Court upheld separate convictions for possession of separate amounts of LSD on consecutive days where the evidence showed that the contraband was located in the same room, although police did not enter the room until the second day. Other jurisdictions which have considered the question appear to have adopted the rule that the possession offenses must be separate in time and space to warrant separate convictions. *See Powell v. State*, 502 S.W. 2d 705 (Tex. Crim. App. 1973); *People v. Shea*, 111 Cal.

App. 3d 920, 169 Cal. Rptr. 24 (1980). Whether particular circumstances of possession constitute a single criminal act or several is a determination of a factual nature to be made by the trial court. *See State v. Kemp*, 305 N.W. 2d 322 (Minn. 1981); *Commonwealth v. Sabathne*, 227 Pa. Super. 331, 323 A. 2d 337 (1974). North Carolina effectively follows the same rule by investing the trial court with discretion to quash duplicitous indictments. *See State v. Hopkins*, 5 N.C. App. 282, 168 S.E. 2d 64 (1969). The question of whether these facts justified separate indictments was, therefore, addressed to the discretion of the court on defendants' motions to quash made at the beginning of trial.

The circumstances of each case will determine whether separate offenses may properly be charged. Obviously, if all the cocaine had been found on defendants' persons at the same time, only one offense could be charged. *See People v. Shea, supra* (three "ballons" of heroin on defendant's person could not support three convictions). On the other hand, the time/space differential between offenses need not be large. *See Gibson v. State*, 315 So. 2d 523 (Fla. App. 1975) (sales of LSD five minutes apart supported separate convictions); *United States v. Privett*, 443 F. 2d 528 (9th Cir. 1971) (three packages of heroin of different purity found on person and at two different places in car supported three convictions). Here, the evidence showed that defendants had sold a large amount of cocaine, and shortly thereafter were found with traces of cocaine in vials for personal use. There was no evidence that defendants had filled their vials out of the larger amount, nor that they had done so and then used the cocaine. There was no evidence that defendants intended to sell the residual cocaine. The transfer of the large amount of cocaine was entirely complete when the subject vials were found. Under these circumstances, we hold that the trial court did not err in denying defendants' motions to quash and that they could properly be convicted of both offenses.

Defendants contend that since the indictments simply alleged possession of cocaine on 15 June 1982, insufficient notice was given. However, one indictment alleged felonious trafficking by possession, while the other merely alleged misdemeanor possession. On the facts of the case this provided sufficient notice. Defendants' argument on their motions to quash clearly indicated that they knew which possession was charged in each indictment.

They did not move for a bill of particulars. We hold that no prejudice resulted from the drawing of indictment charging possession on 15 June 1982. *State v. Sturdivant, supra.*

V

**[9]** The accomplice testified that defendants came to her place of employment repeatedly during the seven months prior to June 1982 and shared cocaine and other drugs with her and others. Defendants contend that this constituted inadmissible evidence of other crimes. Evidence of other drug violations is not admissible if its only relevance is to show disposition to deal in illicit drugs. *State v. Willis,* 309 N.C. 451, 306 S.E. 2d 779 (1983). However, such evidence is properly admissible to show specific mental intent or state or to show guilty knowledge. *Id.* Here, defendants both denied any knowledge of drug dealing and maintained that a third person, Autry, was the party responsible for the sales. Thus, evidence of their prior distribution of illicit drugs was competent to show guilty knowledge. The court properly admitted it and specifically instructed the jury that they were to consider such evidence only for that limited purpose. This assignment is, therefore, without merit.

VI

**[10]** The court, on motion by the State, ordered the cases against the defendants consolidated and later denied their motions to sever made at the close of the State's evidence. Defendants assign error to these rulings. Defendants were indicted from multiple identical felonies arising from the same criminal activity.[1] Therefore, consolidation was appropriate. *State v. Autry,* 27 N.C. App. 639, 219 S.E. 2d 795 (1975). Neither defendant offered a defense antagonistic to the other: both claimed ignorance of the cocaine dealings of a third party. No specific evidence is pointed out that was improperly included or excluded as a result of consolidation. The principal dangers of improper consolidation thus did not materialize. *See State v. Foster,* 33 N.C. App. 145, 234 S.E. 2d 443, *cert. denied,* 293 N.C. 255, 237 S.E. 2d

---

1. The misdemeanor cocaine possession and concealed weapons charges are identical, but involve different criminal activity. Similarly, defendant Carter alone was indicted for marijuana possession. These misdemeanors played only a minor role in the trial, however, and no prejudice is alleged or apparent as a result of including these charges.

537 (1977). Defendants had ample opportunity to confront the witnesses against them, including each other. The court did not abuse its discretion in ordering consolidation.

[11]   G.S. 15A-927(b)(2) requires the court to consider, upon a motion for severance made during trial, "whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Although there were numerous charges in the case, the transactions on which they were based were fairly simple, involving a limited number of persons and a limited period of time. Several offenses charged were possession offenses not seriously disputed by defendants. Therefore, the court could properly conclude that the jury would not be confused and did not abuse its discretion in denying severance. *See State v. Overton*, 60 N.C. App. 1, 298 S.E. 2d 695 (1982), *disc. review denied and appeal dismissed*, 307 N.C. 580, 299 S.E. 2d 652; *State v. Ruviwat*, 307 N.C. 581, 299 S.E. 2d 652 and *State v. Smedley*, 307 N.C. 581, 299 S.E. 2d 653 (1983) (severance properly denied despite sixteen indictments involving at least fourteen conspirators in fifteen-year international conspiracy).

Relying on *Overton, supra*, defendants contend that the court did not properly apply the safeguards appropriate "for the admission of evidence at trial involving multiple defendants: clear rulings on admissibility, limitations on the relevance of evidence vis-a-vis a particular defendant, and adequate instructions." *Id.* at 15, 298 S.E. 2d at 704. Defendant Carter points particularly to the absence of any instructions relating to the relevance of the independent acts or statements of defendant Rozier as evidence of Carter's guilt. No authority is cited to support the proposition that such instructions are *required*: the court clearly instructed the jury that it must consider each defendant and each offense separately. No hearsay statements by absent co-conspirators (except those attributed by defendants to Autry) came in. On this record no prejudicial error appears.

VII

Defendants assign as error the court's denial of their motions for mistrial made upon the conclusion of the prosecutor's argu-

ment to the jury. Various statements made by the prosecutor precluded any possibility of a fair trial, they contend.

Counsel are allowed wide latitude in their arguments to the jury, subject to the discretionary control of the trial court. The court's exercise of its discretion in controlling argument will not be disturbed absent gross abuse. *State v. Smith,* 294 N.C. 365, 241 S.E. 2d 674 (1978).

[12] The prosecutor characterized a question posed by defense counsel concerning willingness to lie to stay out of prison as "slick." Defense counsel immediately objected; the court sustained the objection and instructed the jury to disregard the characterization. Thus, the impropriety, if any, was cured. *State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574 (1982).

[13] Defendants also contend that they were unfairly characterized as "the devil." This came after defendants characterized the accomplice as a cunning liar and prostitute in their arguments. In response, the prosecutor described to the jury the world of prostitution and bikers' clubs the case had shown them:

> MR. BOWEN [Assistant District Attorney]: . . . It's a place we've seldom been and maybe that most of us don't particularly want to go. But we've got two more visitors to those same places here on trial. And I've heard it said that if you want to try the devil—
>
> MR. CRUMPLER [for defendant Rozier]: Objection.
>
> MR. BOWEN: —you're going to have to go to hell to get your witnesses.
>
> MR. CRUMPLER: Objection.
>
> THE COURT: Overruled.

Taken in context, the prosecutor's metaphor falls short of the direct name-calling, *see State v. Davis,* 45 N.C. App. 113, 262 S.E. 2d 329 (1980), or vituperative hyperbole, *see State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335 (1967), which has been found to be reversible error in other cases. It did not "torture the sense of the record" sufficiently to deprive defendants of a fair trial. *State v. Earnhardt,* 56 N.C. App. 748, 290 S.E. 2d 376, *aff'd in relevant*

*part*, 307 N.C. 62, 296 S.E. 2d 649 (1982) (argument that defendants were "acting like a pack of wolves" not reversible error).

[14]  At another point, the prosecutor began to relate an anecdote about a small child, apparently intending to tell how her life had been ruined by drugs. Defendants promptly objected and the court sustained their objection. The prosecutor then argued to the jury in general terms that children are naturally curious and "that in the drug world, there are those who would play upon that natural curiosity." Defendants' objection was overruled. This precise situation has been before this Court before, and we held that while such remarks are not condoned the court did not abuse its discretion in overruling defendants' objection. *State v. Gagne*, 22 N.C. App. 615, 207 S.E. 2d 384, *cert. denied*, 285 N.C. 761, 209 S.E. 2d 285 (1974).

[15]  Finally, at the close of his argument, the prosecutor suggested to the jury that "there's maybe a higher law" than the court's. He read to the jury from the Bible, specifically 1 Corinthians 3:16, " 'know ye not that ye are the temple of God and that the spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple are ye.' " The prosecutor repeated the "him shall God destroy" language and noted that there was no death penalty in this case. Defendants objected promptly to all the foregoing arguments; the court sustained the objections, except as to the Biblical language itself. No corrective instructions were given at that time. The prosecutor then told the jury that they could nevertheless ensure that defendants would be out of the drug business for a long time and therewith ended his argument. The court immediately instructed the jury to disregard any statements to which objections had been sustained. Defendants argue that this argument constituted an improper appeal to the passions of the jury, and that the prosecutor attempted to convince the jury that no penalty short of death was too severe for these defendants. The court sustained their objections to the "higher law," death penalty, and destruction remarks. Within a few moments, while the matter was still fresh in the jurors' minds, the court gave a curative instruction. Ordinarily, where the court sustains an objection to improper argument and immediately gives a curative instruction, the impropriety is cured. *State v. Woods, supra*. The "blanket" instruction given at the end of argu-

ment is not approved, but in this instance it was sufficient to cure the impropriety. Although the record tends to indicate that the prosecutor tread close to the limits of propriety, we do not find any single transgression sufficient to compel a finding of prejudicial error. Nor does the argument as a whole compel such a result. Therefore, this assignment is overruled.

## VIII

[16] The court gave an instruction on interested witnesses; it did not give the pattern accomplice instruction, despite defendants' request, in view of the "number of interested witnesses" who had testified. Defendants claim prejudicial error, although they did not preserve their objection as required by App. R. 10(b)(2). A comparison of the requested instruction, N.C.P.I.—Crim. 104.25, and the instructions given indicates that the substance of the requested instruction was in fact given in any event. The only significant portion of the text omitted was the definition of accomplice; the court instructed the jury that the accomplice was charged with the same criminal offenses as defendants and had entered pleas of guilty, and told them that she was "considered by the law to have an interest in the outcome of the trial." The court then gave the appropriate scrutiny instruction. Defendants were entitled to an instruction *in substance* on the accomplice testimony. *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975). This they received. The jury was fully informed of the character of the witness and the nature of her agreement with the State. *See State v. Morgan*, 60 N.C. App. 614, 299 S.E. 2d 823 (1983). This assignment is accordingly overruled.

## IX

The court consolidated the felony convictions arising from the 9 June 1982 transactions for judgment. The convictions arising from the transactions of 15 June 1982 were similarly consolidated. The most serious offense in each group, trafficking, is a Class G felony, which carries a presumptive sentence of 4½ years. G.S. 15A-1340.4(f). For each defendant for each group of convictions the court made the following findings in aggravation: (1) that defendant had a prior conviction punishable by more than 60 days' confinement, (2) that the statutory minimum sentence for trafficking is seven years, and (3) that defendant had been convicted of offenses subject to consecutive sentences but which had

been consolidated for judgment. Defendants respectively received consecutive sentences of ten and twelve years for each group of felonies.

A

[17] Defendants contend that the court's failure to make separate findings tailored to each offense constitutes prejudicial error. *State v. Ahearn*, 307 N.C. 584, 598, 300 S.E. 2d 689, 698 (1983), clearly requires that:

> in every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense.

The State has advanced no compelling reason to support its contention that *Ahearn* does not apply here. Therefore, the court erred by failing to make separate findings tailored to each offense.

B

It is now firmly established, however, that failure to comply with *Ahearn* does not automatically constitute prejudicial error. *State v. Higson*, 310 N.C. 418, 312 S.E. 2d 437 (1984). Both defendants had three consolidated convictions arising out of the events of 9 June 1982: felonious possession with intent to sell or deliver cocaine, felonious sale or delivery, and felonious conspiracy to traffic. These are Class H, Class H, and Class G felonies, respectively, with the conspiracy (Class G) conviction carrying a statutory minimum seven-year sentence, and the others presumptive sentences of three years. G.S. 15A-1340.4(f); 90-95(b)(1); 90-95(h)(3); 90-95(i). With no finding whatsoever of aggravating factors, then, the court could have sentenced defendants to thirteen years imprisonment, instead of the ten years imposed. Accordingly, defendants have shown no prejudicial error; the sentences imposed represented the judgment of the trial court, in its discretion, as to the appropriate punishment and were within its power to impose. Remanding this case for resentencing, therefore, would be purposeless. *State v. Locklear*, 61 N.C. App. 594, 301 S.E. 2d

437, *disc. review denied*, 308 N.C. 679, 304 S.E. 2d 759 (1983) (allegedly improper aggravating factor not prejudicial where possible presumptive sentences totalled forty years and defendant received sentence of only ten years). The sentences based on the 9 June 1982 convictions, therefore, are affirmed.

C

With respect to the two consolidated felonies based on the transactions of 15 June 1982, the court found as a factor in aggravation that defendants could have received consecutive sentences. However, we have already held that judgment must be arrested in each conspiracy case (Rozier—82CRS9743; Carter—82CRS9749). Without deciding whether the court could properly find the cited factor, then, it is clear from the facts that it no longer applies to each remaining substantive trafficking conviction. The sentences imposed are greater than the presumptive or statutory minimum. In this situation, every factor considered in aggravation by the trial court must be considered to have contributed to the severity of the sentence. *State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983). Therefore, prejudicial error occurred and remand for resentencing of these cases, 82CRS9740 (Rozier) and 82CRS9748 (Carter), is proper.

D

[18] Defendant Carter contends that the court erred in failing to find as a mitigating factor that he was only a passive participant in these crimes. "[A] trial judge's failure to find a mitigating factor will be error where the evidence is (1) substantial or uncontradicted and (2) inherently credible." *State v. Winnex*, 66 N.C. App. 280, 311 S.E. 2d 594 (1984). To show error, defendant must show that " 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.' " *State v. Jones*, 309 N.C. 214, 220, 306 S.E. 2d 451, 455 (1983), *quoting Bank v. Burnette*, 297 N.C. 524, 536-37, 256 S.E. 2d 388, 395 (1979).

Here, although there was substantial evidence that Rozier took the lead role, there was evidence before the court that Carter knowingly served as Rozier's messenger, that Carter went along with Rozier to ensure that the pickup on 9 June went

State v. Rozier

smoothly, that Carter allowed his house to be used and was present at both transactions, and that he was ready to join in armed pursuit of the agent. This evidence allowed the court to reasonably infer that Carter was not a passive participant nor was his role minor. *Compare State v. Jones, supra* (factor compelled by uncontradicted evidence that defendant tried to persuade accomplice not to kill victim and waited outside during killing).

X

We conclude that with the exception of the 15 June 1982 conspiracy cases, all assignments relating to the guilt-innocence phase must be overruled; judgment in those two cases is arrested. For error in sentencing, the other 15 June 1982 felony cases must be remanded to the trial court. No error has been shown as to the misdemeanor or 9 June 1982 felony convictions. The result, therefore, is:

As to defendant Rozier:

Case 82CRS9740—remanded for resentencing;

Case 82CRS9743—judgment arrested; and

Cases 82CRS9741, 82CRS9742, 82CRS9744, and 82CRS9911—no error.

As to defendant Carter:

Case 82CRS9748—remanded for resentencing;

Case 82CRS9749—judgment arrested; and

Cases 82CRS9745, 82CRS9746, 82CRS9747, 82CRS9750, and 82CRS9926—no error.

Judges ARNOLD and PHILLIPS concur.