STATE OF NORTH CAROLINA v. LEONARD HICKS

No. 8611SC1095

(Filed 2 June 1987)

1. **Burglary and Unlawful Breakings § 3— breaking and entering alleged — failure to use the disjunctive — indictment not fatally defective**

    An indictment which charged defendant with conspiracy "to commit Breaking, Entering and Larceny" was not fatally defective because it failed to allege conspiracy to break *or* enter.

2. **Conspiracy § 6— conspiracy to break or enter — conspiracy to commit larceny — evidence of only one agreement — two convictions improper**

    Defendant could not be convicted of both conspiracy to break or enter and conspiracy to commit larceny where there was evidence of only one agreement and therefore one conspiracy.

3. **Criminal Law § 124— verdict sheet — use of "guilty" — defendant not prejudiced**

    Although the verdict sheet used by the trial court was not preferred and the use of the words "not guilty" on the verdict sheet is preferred, defendant was not prejudiced in light of the verdict form itself, the trial court's instructions to the jury, and the poll of the jury after it returned its verdict.

APPEAL by defendant from *Bowen, Wiley F., Judge.* Judgment entered 13 March 1986 in Superior Court, HARNETT County. Heard in the Court of Appeals 5 March 1987.

On 3 February 1986, the Harnett County grand jury returned a two-count true bill against defendant, Leonard Hicks, as follows:

INDICTMENT — CONSPIRACY — 85CRS10299

STATE OF NORTH CAROLINA
HARNETT COUNTY

In The General Court of Justice
Superior Court Division

STATE v. Leonard Hicks

The jurors for the State upon their oath present that on or about the 20th day of December, 1985, in the county named above the defendant named above unlawfully, willfully and feloniously did conspire with Richard Lee Elliott and Timothy Ray to commit the offense of felony Breaking, Entering and Larceny.

And the jurors for the State upon their oath present that on or about the 20 day of December, 1985, in the county named above the defendant named above unlawfully, willfully and feloniously did conspire with Richard Lee Elliott and Timothy Ray to commit the offense of felony Larceny.

On 11 March 1986, defendant was tried before a jury. The State presented evidence that tended to show the following:

At 1:30 in the afternoon of 20 December 1985, defendant, Leonard Hicks, along with Timothy Ray, rode in defendant's automobile to the home of Richard Lee Elliott. The trio proceeded to drive to the home of Kevin Thomas. Elliott testified that defendant passed by Kevin Thomas' home, stopped, parked his automobile, and told Ray and Elliott "to go in there and get what we could get." Defendant told Ray and Elliott that he would wait for them down the road. Elliott further testified that he and Ray proceeded to Kevin Thomas' house and knocked on the door, that they did not receive an answer, and that they went to the back door where they were met by Kevin Thomas.

Kevin Thomas testified that while home sick on the afternoon of 20 December 1985, he heard his dogs barking at something in his yard. He looked out the window to see what they were barking at and saw them take off chasing after a maroon Trans Am

automobile going down the road. After five or six minutes he saw two black males come down the edge of the woods toward his house, pass through his barking dogs, walk right up to his front door, and began pounding on the door. Thomas went to the rear of his home to get a twelve-gauge shotgun. Thomas saw that the two men had come from his front door to a deck at the back of his home where there is a sliding-glass door. Thomas confronted the men. One man, whom Thomas later identified as being Timothy Ray, stated that he was looking for gas for his car. Thomas told Ray there was no gas on his back porch and to back away from the sliding-glass door. Thomas telephoned the sheriff's office.

Elliott testified that he and Ray went down the road to wait for defendant. Two patrol cars arrived on the scene while Ray and Elliott were waiting for defendant. Ray and Elliott were questioned and were being transported to the sheriff's department when Elliott observed defendant driving back to the place where defendant had let them out of the automobile. The officers stopped defendant's automobile and instructed him to follow them to the sheriff's department. A deputy sheriff testified that defendant was driving a maroon Pontiac sports car.

Defendant's evidence tended to show the following: Defendant, testifying in his behalf, denied that on 20 December 1985, he had been with, or conspired with, Timothy Ray and Richard Lee Elliott. Defendant testified that when he was stopped by sheriff's deputies on 20 December 1985, he was driving a candy-apple red Firebird automobile, and that he was on his way home after having gone to Bruce West's shop located near Thomas' house. It was also defendant's testimony that Bruce West was not in when defendant went to Bruce West's shop. Timothy Ray testified that defendant did not conspire with him and Elliott and that defendant did not transport them to Thomas' home.

The jury found defendant guilty of count one, felonious conspiracy to commit felonious breaking and entering, and guilty of count two, felonious conspiracy to commit felonious larceny. The trial court sentenced defendant to three years imprisonment for felonious conspiracy to commit breaking and entering, and for felonious conspiracy to commit larceny, the trial court sentenced defendant to two years imprisonment to begin at the expiration of the sentence imposed on count one. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James B. Richmond, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender, Daniel R. Pollitt, for defendant.*

JOHNSON, Judge.

I

[1]   Defendant, by his first Assignment of Error, argues that the allegations contained in the indictment returned against him were fatally insufficient to charge the alleged offenses. We disagree.

G.S. 15A-924(a)(5), prescribes the requirements for a criminal indictment, in pertinent part, as follows:

(a) A criminal pleading must contain:

. . .

(5) A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

G.S. 15-153 provides the following:

sec. 153. Bill or warrant not quashed for informality.

Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill of proceeding, sufficient matter appears to enable the court to proceed to judgment.

The purpose of an indictment "is (1) to give the defendant notice of the charge against him to the end that he may prepare his defense and to be in a position to plead former acquittal or former conviction in the event he is again brought to trial for the same offense; [and] (2) to enable the court to know what judgment

to pronounce in case of conviction." *E.g.*, *State v. Burton*, 243 N.C. 277, 278, 90 S.E. 2d 390, 391 (1955). Bearing these principles in mind we turn to the sufficiency of the allegations of the indictment before us.

The indictment in the case *sub judice* charged defendant with two counts of conspiracy. "A criminal conspiracy is an agreement by two or more persons to perform an unlawful act or to perform a lawful act in an unlawful manner." *State v. Rozier*, 69 N.C. App. 38, 49, 316 S.E. 2d 893, 900 (1984). Defendant's challenge to the sufficiency of the true bill returned against him is that "the first count of the indictment is fatally defective because it does not allege the essential elements of the alleged conspiracy." Defendant argues that the allegation he conspired "to commit felony' Breaking, Entering and Larceny" is fatally deficient because the operative language of G.S. 14-54(a) is worded differently, to wit: "breaking *or* entering." However, defendant's argument fails for an indictment which avers facts which constitute every element of an offense does not have to be couched in the language of the statute. *State v. Anderson*, 259 N.C. 499, 130 S.E. 2d 857 (1963). Moreover, the mere omission of the word "or" could hardly have affected defendant's notice of the crime charged, or his ability to prepare his defense. The deviation from the statutory language, if anything, would have to be construed as in defendant's favor since it was alleged that he conspired to "break, [and] enter" as opposed to "break *or* enter." The indictment returned against defendant alleges that defendant entered into an agreement with two or more persons to commit, on 20 December 1985, the unlawful act of breaking and entering to commit larceny. We deem that the foregoing are sufficient allegations to meet the requirements of G.S. 15A-924(a)(5).

## II

**[2]** Defendant also argues that one of his two conspiracy convictions must be vacated because there was evidence of only one agreement. After careful consideration, we agree.

The applicable principles which we must rely upon to decide the question before us were summarized by this Court as follows:

It is well established that the gist of the crime of conspiracy is the agreement itself, not the commission of the substantive

crime. *See e.g., State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978); *see also Braverman v. United States*, 317 U.S. 49, 87 L.Ed. 23, 63 S.Ct. 99 (1942). It is also clear that where a series of agreements or acts constitute a *single* conspiracy, a defendant cannot be subjected to multiple indictments consistently with the constitutional guarantee against double jeopardy. *United States v. Kissel*, 218 U.S. 601, 54 L.Ed. 1168, 31 S.Ct. 124 (1910). Defining the scope of a conspiracy or conspiracies remains a thorny problem for the courts. This Court has affirmed multiple conspiracy convictions arising from multiple substantive narcotics offenses involving a single amount of drugs found on a single occasion, *State v. Sanderson*, 60 N.C. App. 604, 300 S.E. 2d 9, *disc. rev. denied*, 308 N.C. 679, 304 S.E. 2d 759 (1983), apparently on the theory that each conspiracy involved separate elements of proof and represented a separate agreement. However, under North Carolina law multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies. *State v. Brewer*, 258 N.C. 533, 129 S.E. 2d 262 (1963), *appeal dismissed*, 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed. 2d 40 (1963) (per curiam). There is no simple test for determining whether single or multiple conspiracies are involved: the essential question is the nature of the agreement or agreements, *Braverman v. United States, supra*, but factors such as time intervals, participants, objectives, and number of meetings all must be considered.

*State v. Rozier*, 69 N.C. App. 38, 52, 316 S.E. 2d 893, 902 (emphasis in original), *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984). This Court, in *Rozier, supra*, further stated "that the State, having elected to charge separate conspiracies, must prove not only the existence of at least two agreements but also that they were separate." *Id.* at 53, 316 S.E. 2d at 902.

The evidence in the case *sub judice* only established the existence of one agreement and only one conspiracy, to wit: that defendant conspired with Richard Lee Elliott and Timothy Ray to break into Thomas' house to steal property from within. Testimony by defendant's co-conspirators was that at 1:30 p.m. on 20 December 1985, defendant drove his red Trans Am automobile to Richard Elliott's home. Accompanying defendant was Timothy Ray. Richard Elliott testified that he entered defendant's automo-

bile and defendant drove the trio to a house located at Route 1, Bunn Level. Richard Elliott testified that upon their arrival "he [defendant] passed by the house and in a little ways he let us off and told us to go in there and get what we could get." Richard Elliott further testified that "[h]e [defendant] told us to get what we could get and put it in pillowcases and he would come back in fifteen minutes to pick us up." The whole objective of the agreement was to break into the house and "get what [they] could get." The agreement was entered into during one meeting with very little said and with one objective in mind. There was no evidence of two separate agreements or of any other meetings between the participants.

The State, in its brief, argues that "[f]elony breaking or entering as defined in G.S. 14-54(a) and felony larceny as defined in G.S. 14-72 are separate crimes, and conviction of either does not bar prosecution for the other even though the crimes arise out of the same transaction." However, the point missed by this argument is that the two convictions defendant appeals from are for *two agreements* to commit the substantive underlying offenses, not for the commission of offenses in violation of G.S. 14-52(a) and G.S. 14-72. We cannot allow both convictions to stand when there was evidence of only one agreement. *Rozier, supra.* Therefore, we vacate the judgment imposing a two year sentence for the conviction of defendant for the second count of the indictment charging him with conspiracy to commit felonious larceny. To rule otherwise would offend double jeopardy principles. *Rozier, supra.*

### III

[3] By his final Assignment of Error defendant argues that he "is entitled to a new trial because the trial court failed to submit the verdict of not guilty to the jury in the verdict form, thereby improperly expressing its opinion and coercing the jury into returning a guilty verdict." After extensively reviewing the verdict form in question, the trial court's instructions to the jury and the poll of the jury after it returned its verdict, we find no prejudicial error.

G.S. 15A-1237 requires that the jury's verdict be in writing. The verdict form submitted to the jury with the answer returned by the jury is as follows:

VERDICT — NO. 85CRS10299

We, the Jury, by unanimous verdict, find the defendant Leonard Hicks:

(1) Guilty of felonious conspiracy to commit felonious Breaking and Entering.

    Answer:

(2) Guilty of felonious Conspiracy to commit felonious Larceny.

    Answer:

. . . .

(Exceptions omitted.) The trial court, in its instructions to the jury, assiduously instructed the jury on its duty to return verdicts of "not guilty" if the jury had a reasonable doubt as to defendant's guilt. With respect to the verdict sheet, the trial court specifically instructed the jury as follows:

When all twelve members of the jury agree on a verdict, your foreperson should record *your verdict* on the verdict sheet. There are two counts and *the foreperson should write in 'guilty' or 'not guilty' where the word 'answer' is, and there is a line drawn there.*

(Emphasis supplied.)

The trial court's final mandate to the jury specifically instructs the jury with respect to the permissible verdicts that it could return. Moreover, the trial court specifically instructed the jury on how to enter the verdict on the sheet supplied to them by the trial court. When the jury was polled each juror answered that the verdict returned by the foreperson was his or her verdict and that each still assented thereto. Accordingly, although the verdict sheet utilized by the trial court is not preferred and the use of "not guilty" on the verdict sheet is preferred we conclude that there is no reasonable possibility that the outcome would have differed if the jury verdict sheet had been worded differently. *See* G.S. 15A-1443.

Case No. 1—85CRS10299; affirmed.

Case No. 2—85CRS10299; judgment vacated.

Judges EAGLES and ORR concur.