STATE v. GOSNELL

[231 N.C. App. 106 (2013)]

━━━━━━━━━━

STATE OF NORTH CAROLINA
v.
DANNY DALE GOSNELL

No. COA13-614

Filed 3 December 2013

1. **Homicide—first-degree murder—not guilty verdict—jury instructions**

    The trial court did not commit plain error in a first-degree murder case by failing to instruct the jury of its duty to return a not guilty verdict for first-degree murder based on the theory of premeditation and deliberation if the State failed to establish any essential element beyond a reasonable doubt. The verdict sheet provided a space for a "not guilty" verdict, and the trial court's instructions on second-degree murder and the theory of lying in wait comported with the requirement in *State v. McHone*, 174 N.C. App. 289.

2. **Homicide—first-degree murder—lying in wait—jury instructions—sufficient evidence**

    The trial court did not err in a first-degree murder case by instructing the jury that it could convict defendant of first-degree murder based on the theory of lying in wait where there was sufficient evidence to support the instruction. Furthermore, any error was not prejudicial.

Appeal by Defendant from judgment entered 3 October 2012 by Judge Marvin P. Pope in Superior Court, Buncombe County. Heard in the Court of Appeals 5 November 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for Defendant.*

McGEE, Judge.

Danny Dale Gosnell ("Defendant") was indicted for first-degree murder of Brenda Kay Roberts Williams ("Ms. Williams") on 9 January 2012. The facts relevant to a determination of the issues on appeal are presented in the analysis portion of this opinion. A jury found Defendant guilty of first-degree murder on 2 October 2012. Defendant appeals.

## I. "Premeditation and Deliberation" Instruction

**[1]** Defendant argues "the trial court committed plain error by failing to instruct the jury of its duty to return a not guilty verdict for first-degree murder based on the theory of premeditation and deliberation if the State failed to establish any essential element beyond a reasonable doubt."

### A. Standard of Review

"Because defendant did not object at trial to the omission of the not guilty option from the trial court's final mandate to the jury, we review the trial court's actions for plain error." *State v. McHone,* 174 N.C. App. 289, 294, 620 S.E.2d 903, 907 (2005).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (alterations in original) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted)).

To show plain error, "a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental,

a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation and quotation marks omitted).

## B. Analysis

"Our Supreme Court has held that the failure of the trial court to provide the option of acquittal or not guilty in its charge to the jury can constitute reversible error." *McHone*, 174 N.C. App. at 295, 620 S.E.2d at 907. This Court held that "[t]elling the jury 'not [to] return a verdict of guilty' as to each theory of first degree murder does not comport with the necessity of instructing the jury that it <u>must or would</u> return a verdict of not guilty[,]" *if it rejected the conclusion that the defendant committed first-degree murder. Id.* at 297, 620 S.E.2d at 909.

As in *McHone*, we "first consider the jury instructions on murder in their entirety in determining whether the failure to provide a not guilty mandate constitutes plain error." *Id.* The instructions on premeditation and deliberation, which Defendant challenges on appeal, are quoted below:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting with malice, killed the victim with a deadly weapon, thereby proximately causing the victim's death, that the defendant intended to kill the victim and that the defendant acted after premeditation and with deliberation, it would be your duty to return a verdict of "guilty of first-degree murder["] on the basis of malice, premeditation and deliberation. <u>If you do not so find or have a reasonable doubt as to one or more of these things you would not return a verdict of "guilty of first-degree murder" on the basis of malice, premeditation and deliberation.</u> (emphasis added).

As to the theory of lying in wait, the trial court instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant assaulted the victim while lying in wait for her and that the defendant's act proximately caused the victim's death, it would be your duty to return a verdict of "guilty of first-degree murder." <u>If you do not so find or if you have a reasonable doubt as to one or more of these things it would be your duty to return a verdict of "not guilty."</u> (emphasis added).

STATE v. GOSNELL

[231 N.C. App. 106 (2013)]

As to second-degree murder, the trial court instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant intentionally and with malice wounded the victim with a deadly weapon and that this proximately caused the victim's death, it would be your duty to return a verdict of "guilty of second-degree murder." If you do not so find or have a reasonable doubt as to one or more of these things it would be your duty to return a verdict of "not guilty." (emphasis added).

From our review of the entirety of the jury instructions on murder, it appears that, as to the theory of premeditation and deliberation, the trial court failed to comport precisely with the requirement to instruct that the jury would return a verdict of "not guilty" if it rejected the conclusion that Defendant committed first-degree murder on the basis of premeditation and deliberation, per *McHone*. However, it further appears that the trial court, in its instructions, comported with the requirement regarding both lying in wait and second-degree murder.

By contrast, the trial court in *McHone* "failed to instruct the jury on the option of finding defendant not guilty during its final mandate." *McHone*, 174 N.C. App. at 296, 620 S.E.2d at 908. "Indeed, it neither stated that the jury could find [the] defendant not guilty of first degree murder, nor that it was their duty to do so should they conclude the State failed in its burden of proof." *Id.* Rather, the trial court "essentially pitted one theory of first degree murder against the other, and impermissibly suggested that the jury should find that the killing was perpetrated by [the] defendant on the basis of at least one of the theories." *Id.* at 297, 620 S.E.2d at 909.

In *McHone*, this Court also stated that "[s]econdly, we consider the content and form of the first degree murder verdict sheet in determining whether the failure to provide a not guilty mandate constitutes plain error." *Id.* The verdict sheet in the present case is structured as follows:

1. \_\_\_\_ GUILTY OF FIRST DEGREE MURDER by

    (you may check one, both or neither of the following:)

    \_\_\_\_ MALICE, PREMEDITATION AND DELIBERATION and/or

    \_\_\_\_ LYING IN WAIT.

2. ____ GUILTY OF SECOND DEGREE MURDER.

3. ____ NOT GUILTY.

By contrast, the verdict sheet in *McHone* "did not provide a space or option of 'not guilty.' " *McHone*, 174 N.C. App. at 298, 620 S.E.2d at 909.

This Court in *McHone* considered the instructions and verdict sheet for the other offenses with which the defendant was charged.

> Rather than help correct the failure to provide a similar not guilty mandate with respect to the first degree murder charge, the presence of a not guilty final mandate as to the taking offenses likely <u>reinforced</u> the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder.

*McHone*, 174 N.C. App. at 298, 620 S.E.2d at 909.[1] Additionally, this Court noted that the verdict sheet for the other offenses, "which <u>did</u> afford a space for a not guilty verdict, also likely <u>reinforced</u> the suggestion that [the] defendant must have been guilty of first degree murder on some basis[.]" *McHone*, 174 N.C. App. 298, 620 S.E.2d at 909.

In the present case, there are no other offenses to analyze in the course of our plain error review. The verdict sheet provided a space for a "not guilty" verdict, and the trial court's instructions on second-degree murder and the theory of lying in wait comported with the requirement in *McHone*. The trial court did not commit plain error in failing to instruct that the jury would or must return a "not guilty" verdict if it did not conclude that Defendant committed first-degree murder on the basis of premeditation and deliberation.

### II. "Lying in Wait" Instruction

[2] Defendant also argues the trial court erred by instructing the jury that it could convict Defendant of first-degree murder based on the theory of lying in wait.

---

1. The versions of *McHone* available online through Westlaw and LexisNexis contain the full sentence quoted above. The *South Eastern Reporter, 2d Series* also contains this full sentence. The slip opinion available online also contains this full sentence. *State v. McHone*, COA04-1605, slip op. at 13. However, the subject of the sentence is missing from the hard copy of the N.C. Court of Appeals Reports. The N.C. Court of Appeals Reports has only the following incomplete sentence: "Rather than help correct the failure to provide a similar not guilty mandate with respect to the taking offenses likely <u>reinforced</u> the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder." *McHone*, 174 N.C. App. at 298.

"Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter*, 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citing *State v. Buchanan*, 287 N.C. 408, 421, 215 S.E.2d 80, 88 (1975) (the trial court "should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence")).

"A murder which shall be perpetrated by means of . . . lying in wait . . . shall be deemed to be murder in the first degree[.]" N.C. Gen. Stat. § 14-17 (2011). "[W]hen G.S. 14-17 speaks of murder perpetrated by lying in wait, it refers to a killing where the assassin has stationed himself or is lying in ambush for a private attack upon his victim." *State v. Allison*, 298 N.C. 135, 147, 257 S.E.2d 417, 425 (1979).

> However, it is not necessary that he be actually concealed in order to lie in wait. If one places himself in a position to make a private attack upon his victim and assails him at a time when the victim does not know of the assassin's presence or, if he does know, is not aware of his purpose to kill him, the killing would constitute a murder perpetrated by lying in wait.

*Id.* at 148, 257 S.E.2d at 425 (citing *State v. Wiseman*, 178 N.C. 785, 789-90, 101 S.E. 629, 631 (1919)). "Certainly one who has lain in wait would not lose his status because he was not concealed at the time he shot his victim. The fact that he reveals himself or the victim discovers his presence will not prevent the murder from being perpetrated by lying in wait." *Allison*, 298 N.C. at 148, 257 S.E.2d at 425.

In *State v. Wiseman*, *supra*, the evidence showed that the victim, "almost immediately on getting off the train, was fired upon by one or more persons, at short range[.]" *Wiseman*, 178 N.C. at 790, 101 S.E. at 631. Our Supreme Court concluded that "the killing, in any aspect of this case, was an assassination by lying in wait, and by taking the victim unawares without opportunity to defend himself." *Wiseman*, 178 N.C. at 790, 101 S.E. at 631.

In the present case, Defendant's vehicle was parked on "the other side of the barn" from Ms. Williams' house ("the house") at about 7:20 or 7:25 a.m. One of Ms. Williams' daughters, Amanda Williams ("Amanda"), testified that Ms. Williams received "three or four" phone calls from Defendant on the morning of the offense. Amanda was inside the house with her mother and her sister, Amber Williams ("Amber").

Amanda testified that, at 7:48 a.m., Ms. Williams told Amanda that she was running late and, shortly thereafter, left for work. Amber testified

that, after her mother left the house, her mother "screamed, 'No!' " That was the last time Amber heard her mother speak. Amber further testified that Ms. Williams and Defendant did not argue outside the house for a long period of time. Amber saw Defendant shoot Ms. Williams twice, the second shot occurring while Ms. Williams was on the ground.

A neighbor testified that he drove past Ms. Williams' house on the morning of the offense. At approximately 7:45 or 7:50 a.m., he drove past the house, turned around at a dead-end, and drove past the house again. He noticed an unfamiliar truck parked behind the barn and decided to check on the residents. As he approached the house, he saw Ms. Williams lying on the ground by the barn.

Defendant told the neighbor: "Go away; go away. Leave; leave." When Defendant said the second "leave," he shot Ms. Williams while she was lying on the ground. The neighbor saw Ms. Williams' body "bounce[] up off the ground[.]" The neighbor drove back to the road and called 911. A deputy sheriff responded to the 911 dispatch and arrived at the scene of the offense at approximately 8:05 or 8:10 a.m. The deputy sheriff testified that "[f]our and a-half or five minutes" passed "from the time of dispatch to arrival[.]"

Defendant relies on *State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990), in arguing that the trial court erred in instructing the jury on the theory of lying in wait. In *Lynch*, our Supreme Court noted that *Allison* established "that a lying in wait killing requires some sort of ambush and surprise of the victim." *Id.* at 217, 393 S.E.2d at 815. In *Lynch*, there was "no evidence that [the] defendant ambushed or surprised [the victim] when he fatally stabbed her." *Id.* at 218, 393 S.E.2d at 816.

> The evidence shows without contradiction that before the fatal stabbing [the] defendant walked with his arm around the victim through the parking lot. Later [the] defendant was observed chasing the victim across the lot, catching her and forcing her back to a car in the lot. The victim was heard to say, "No, please, don't do that," after which she was observed coming from between some cars, bleeding and calling for help. [The d]efendant was observed running across the parking lot.

*Id.* at 218-19, 393 S.E.2d at 816. Our Supreme Court concluded that there was "simply no evidence that [the] defendant lay in wait by ambushing or surprising his victim immediately before he inflicted the fatal stab wounds." *Id.* at 218-19, 393 S.E.2d at 816.

In the present case, Defendant contends only that there was no ambush or surprise "immediately before the shooting" because Defendant and Ms. Williams "interacted outside" for approximately ten to thirteen minutes. The evidence, however, does not support this conclusion. Defendant parked on the opposite side of the barn from the house and waited for Ms. Williams. Ms. Williams left the house shortly after 7:48 a.m. By 8:05 or 8:10 a.m., all the following events had transpired: (1) Defendant confronted Ms. Williams, and a short argument ensued; (2) Defendant shot Ms. Williams; (3) a neighbor arrived to check on the residents; (4) he saw Ms. Williams lying on the ground, and Defendant told the neighbor to leave; (5) Defendant shot Ms. Williams a second time while she was lying on the ground; (6) the neighbor drove back to the road and called 911; (7) the 911 call was dispatched to a deputy sheriff's radio; and (8) the deputy sheriff arrived on the scene. The deputy arrived approximately four and a half or five minutes after receiving the dispatch.

The evidence suggests that the shooting immediately, or almost immediately, followed Defendant's ambush of Ms. Williams outside the house. As stated above, our Supreme Court has held that "a lying in wait killing requires some sort of ambush and surprise of the victim." *Lynch*, 327 N.C. at 217, 393 S.E.2d at 815. The evidence does not show that Ms. Williams was aware of Defendant's presence outside the house or Defendant's purpose to kill her. Under *Allison* and *Lynch*, the evidence in this case supports an instruction on lying in wait. The trial court did not err in giving the instruction.

Even assuming Defendant can show error on this basis, Defendant cannot show prejudice resulting from the error because there is no possibility that, had the error in question not been committed, a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a) (2011). The jury returned guilty verdicts on (1) lying in wait and (2) premeditation and deliberation. Defendant has not shown that prejudicial error occurred in this case.

No error.

Judges BRYANT and STROUD concur.