IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-409

Filed 4 June 2024

Durham County, No. 18 CRS 54754

STATE OF NORTH CAROLINA

v.

PHILIP ANTHONY MONTANINO, Defendant.

Appeal by defendant from judgment entered 6 December 2021 by Judge Josephine Kerr-Davis in Durham County Superior Court. Heard in the Court of Appeals 20 February 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Steven Armstrong, for the State.*

*Kimberly P. Hoppin for defendant-appellant.*

DILLON, Chief Judge.

Defendant Philip Anthony Montanino appeals judgment entered upon a jury's verdict finding him guilty of first-degree murder based on the felony-murder rule for the death of Elizabeth Watson which occurred when Defendant stole her car. (The jury found him "not guilty" of first-degree murder based on premeditation and deliberation but returned no verdict on the lesser-included offenses of second-degree murder or voluntary manslaughter.)

Because there was insufficient evidence from which the jury could find that

Defendant's underlying crime was a felony—specifically, the State failed to present sufficient evidence to prove the value of the victim's car to elevate the larceny to a felony—we must reverse Defendant's conviction and remand to the trial court for entry of judgment for the lesser-included offense of involuntary manslaughter. However, on remand the State may retry Defendant for second-degree murder and voluntary manslaughter; but should the State so elect to retry Defendant on those charges and obtain a conviction on either charge, the trial court shall arrest judgment on the involuntary manslaughter conviction.

## I. Background

On 2 July 2018, the victim Elizabeth Watson was found dead in her Durham apartment by police who were conducting a welfare check after the victim's daughter was unable to reach her the previous two days. Other evidence at trial tended to show as follows:

When the police conducted the welfare check, they found the victim's apartment in a state of "disarray," appearing as if there had been a party. The police found the victim dead in her bedroom, wedged between her bed and a wall. She had likely been dead for at least a day. She died from multiple blunt force trauma, suffering injuries to her brain, face, neck, torso, and extremities. She had been struck over 40 times on her back alone. Her blood alcohol level was .10. Police also found empty beer cans in the apartment with fingerprints, later identified as belonging to Defendant. Defendant and the victim had a history of drinking alcohol together at

her apartment.

Police also discovered that the victim's car was missing from the apartment parking lot. Later that day, police found Defendant in Chapel Hill in the vicinity of the victim's vehicle. When apprehended by police, Defendant asked, "Is she dead?" Police found the victim's driver's license and debit card in Defendant's wallet. Police also learned that Defendant sold the victim's smartphone at an ecoATM kiosk in Burlington the previous afternoon.

Defendant moved for dismissal based on insufficient evidence at the close of the State's evidence and again at the close of his evidence. Both motions were denied.

The jury found Defendant guilty of first-degree murder, based on the felony murder rule, determining that the victim died in the course of Defendant stealing her car. He was sentenced to life in prison without the possibility of parole. He appeals.

## II. Analysis

Defendant presents two arguments on appeal, which we address in turn.

### A. Verdict Sheet

Defendant first argues that the trial court erred by failing to include a spot on the verdict form sheet giving the jury the option to find Defendant "not guilty." Defendant concedes that he failed to object at trial to this oversight. Accordingly, we review for plain error. Defendant bears the burden to show, not only error, "but that absent the error, the jury probably would have reached a different result." *State v. Garcell*, 363 N.C. 10, 35, 678 S.E2d 618, 634 (2009).

It is true that the verdict form did not contain a space for the jury to find Defendant "not guilty." However, the wording on the verdict sheet accomplishes the same thing by giving the jury the option to answer "No" on each of the charges. The verdict sheet (with the jury's answers in BOLD) reads as follows with respect to the charge of first-degree murder:

> *We, the jury, return the unanimous verdict as follows:*
>
> 1. *Guilty of First Degree Murder*
>    *ANSWER:* **YES**
>
>    *IF YOU ANSWER "YES", IS IT?*
>
>    A. *On the basis of malice, premeditation and deliberation?*
>       *ANSWER:* **NO**
>    B. *Under the first degree felony murder rule?*
>       *ANSWER:* **YES**
>
> *If you find the Defendant Guilty of First Degree Murder stop here.*

[The verdict sheet continued with questions regarding Defendant's guilt for second-degree murder and voluntary manslaughter, to which the jury could respond either "Yes" or "No." However, since the jury answered "Yes" on the charge of first-degree felony murder, the jury did not answer any questions on the lesser charges.]

The wording in the verdict sheet might not be ideal and does contain language that is ambiguous. However, the ambiguity favors Defendant. Specifically, based on the phrasing, a "No" answer *could be* construed simply to mean that the jury did not *unanimously* agree on Defendant's guilt on a particular crime. That is, the jury could

have thought a "No" answer on first-degree murder based on premeditation and deliberation was appropriate where they were hung on that charge. We, though, construe this ambiguity against the State and interpret the "No" answer on the charge of first-degree murder based on premeditation and deliberation as a "Not Guilty" verdict.

In any event, we conclude that the omission of a separate question whereby the jury could have indicated a verdict of "not guilty" of all charges did not rise to the level of plain error. We note our dissenting colleague's reliance on *State v. McHone*, where a jury was instructed on two theories of first-degree murder. 174 N.C. App. 289, 620 S.E.2d 903 (2005). In that case, our Court held it was plain error for the trial court to fail to include an instruction to the jury regarding its duty to find the defendant "not guilty" in its final mandate coupled with the failure to include a "not guilty" option on the verdict sheet on the murder charges. *Id.* at 299, 620 S.E.2d at 910. However, we conclude that this case is distinguishable.

In the present case, before going through the elements of each crime, the trial court instructed the jury that it could find Defendant "not guilty," specifically stating that "[u]nder the law and evidence in this case it is your duty to return one of the following verdicts: Guilty of first degree murder, or, guilty of second murder, or, guilty of voluntary manslaughter, or not guilty." Our dissenting colleague quotes large portions of the instructions provided by the trial court for the theories of first-degree murder, where the trial court does not discuss the option of returning a "not

guilty" verdict. However, following the portion of the final mandate that is quoted in

the dissent, the trial court continues:

> If you do not find the Defendant guilty of first degree murder [under either theory of premeditation and deliberation or under the felony murder rule], you must then determine whether or not the Defendant is guilty of second degree murder.

Then after reviewing the elements of second-degree murder, the trial court instructed

the jury:

> . . . it would be your duty to return a verdict of guilty of second degree murder. If you do not so find or have a reasonable doubt as to one or more of these things, *it would be your duty to return a verdict of not guilty*, but you would also be – but you should also consider voluntary manslaughter.

(Emphasis added.) Then after reviewing the elements of voluntary manslaughter,

the trial court again reminded the jury in its final mandate of the option to find

Defendant "not guilty":

> . . . it would be your duty to find the Defendant guilty of voluntary manslaughter. . . . However, if you do not so find or have a reasonable doubt as to one or more of these things, *you will return a verdict of not guilty of voluntary manslaughter.*

(Emphasis added.) We conclude that this case is closer to *State v. Gosnell*, 231 N.C.

App. 106, 750 S.E.2d 593 (2013). In that case, our Court held there was no plain error

where the trial court's final mandate did not expressly state that the jury could find

the defendant "not guilty" while discussing first-degree murder, BUT DID discuss the

- 6 -

"not guilty" option when instructing on second-degree murder, stating:

> From our review of the entirety of the jury instructions on murder, it appears that, as to the theory of premeditation and deliberation, the trial court failed to comport precisely with the requirement to instruct that the jury would return a verdict of "not guilty" if it rejected the conclusion that Defendant committed first-degree murder on the basis of premeditation and deliberation, per *McHone*. However, it further appears that the trial court, in its instructions, comported with the requirement regarding both lying in wait and second-degree murder.

*Id.* at 109, 750 S.E.2d at 595. Admittedly, our case is not on "all fours" with *Gosnell*, as the verdict sheet in *Gosnell* did include a space for a "not guilty" verdict. *See id.* at 110, 750 S.E.2d at 596.

However, what further distinguishes our case from *McHone* concerns the verdict sheets. While neither the verdict sheet in our case nor the one in *McHone* contained a space where the jury could expressly indicate a "not guilty" verdict, unlike our case, the verdict sheet in *McHone* did contain a "not guilty" option for separate robbery charges – which were not lesser-included offenses of the homicide charges – and that Court stated "the content and form of the verdict sheet on the taking offenses, which *did* afford a space for a not guilty verdict [ ] likely *reinforced* the suggestion that defendant must have been guilty of first degree murder on some basis." *McHone*, 174 N.C. App. at 298, 620 S.E.2d at 909. The verdict sheet in the present case, though, did not have this issue, as the jury was only instructed on the homicide charges.

We further note that the trial court gave the jury a "jury pack" prior to their deliberation, which referenced the jury's option to return a verdict of "not guilty." Finally, the jury did, in essence, find Defendant "not guilty" of first-degree murder based on premeditation and deliberation by answering "No" on the verdict sheet with respect to that charge.

In sum, we conclude that the trial court did not commit plain error in its instruction to the jury.

### B. Insufficiency of the Evidence

Defendant argues that his murder conviction, based on felony murder, must be set aside based on insufficiency of evidence. The underlying felony upon which the jury based its verdict was his larceny of the victim's car. Defendant correctly argues that, in order to prove *felony* larceny, the State had the burden of proving that the victim's car was worth over $1,000.00 He contends, though, that the State failed to meet its burden of proving the car's value. Based on binding Supreme Court precedent, we must agree.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016). In our review, we view the evidence in the light most favorable to the State. *State v. Elder*, 383 N.C. 578, 586, 881 S.E.2d 227, 234 (2022).

Felony murder—a type of first-degree murder—is the killing of a person which

is "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon[.]" N.C. Gen. Stat. § 14-17(a) (2023).

Here, Defendant was tried for felony murder, with larceny with a deadly weapon as the underlying felony. One essential element of felonious larceny which must be proven by the State is that the value of the stolen property exceeded more than $1,000.00 N.C. Gen. Stat. § 14-72(a) (2023). *See also State v. Boomer*, 33 N.C. App. 324, 329, 235 S.E.2d 284, 287 (1977) ("General Statute 14-72 requires the State to prove the value of the 'property taken' . . . to be in excess of" $1,000.00). Though there was evidence that Defendant stole several items from the victim, the trial court only instructed the jury regarding the victim's vehicle, a 2012 Suzuki Grand Vitari.

While the jury is "free to exercise their own reason, common sense and knowledge acquired by their observation and experiences in everyday life" when determining the stolen property's value, *State v. Edmondson*, 70 N.C. App. 426, 430, 320 S.E.2d 315, 318 (1984), our Supreme Court has instructed that "[t]he jury may not speculate as to the value." *State v. Holland*, 318 N.C. 602, 610, 350 S.E.2d 56, 61 (1986).[1] That is, the State must put on some evidence from which the jury can make

---

[1] A separate holding in *Holland*—specifically, that in considering circumstantial evidence an inference may not be made from an inference—was overruled by our Supreme Court in *State v. Childress*, 321 N.C. 226, 232, 362 S.E.2d 263, 267 (1987). However, the Court in *Childress* left undisturbed the holding in *Holland* regarding the sufficiency of evidence in proving the value of a stolen vehicle in a criminal prosecution.

a dollar value determination. *See, e.g., State v. Cotten*, 2 N.C. App. 305, 311, 163 S.E.2d 100, 104 (1968) (holding that evidence in the form of an opinion regarding the value of the stolen items is sufficient, even if the person offering the opinion is not an expert, so long as the witness demonstrates knowledge gained from experience, information, and observation).

Here, the State did not offer any opinion evidence regarding the vehicle's value, evidence of what the victim paid for the vehicle, or any other evidence which included a dollar amount from which the jury could make a value determination. The State, however, points to the following evidence concerning the vehicle's value as being sufficient: (1) the vehicle's year, make, and model (a 2012 Suzuki Grand Vitari); (2) visual evidence of the car's condition (as seen partially in the background of police body camera footage); and (3) the operability of the vehicle (based on evidence that Defendant drove the vehicle from Durham to Burlington and then to Chapel Hill).

Based on our Supreme Court's holding in *Holland*, though, we must conclude that the State's evidence was insufficient to prove the value of the victim's vehicle.

*Holland* also involved a prosecution concerning a stolen vehicle in which the State had the burden to prove the value of the vehicle exceeded a certain value (then $400.00) to elevate the charge to a felony. *See Holland*, 318 N.C. at 610, 350 S.E.2d at 61. In that case, the State offered no evidence regarding the vehicle's dollar value in the form of an opinion or otherwise (*e.g.*, the purchase price of the vehicle or what the defendant sold the vehicle for). *See id.* Rather, the State merely presented

evidence showing (1) the stolen vehicle's year, make, and model (a 1975 Chrysler Cordoba); (2) the stolen vehicle was the owner's favorite vehicle, and the owner took "especially good care" of the vehicle; (3) a picture of the vehicle; and (4) evidence that the vehicle was operable (as the vehicle was found in Danville, Virginia, after being stolen from the victim's Reidsville home). *Id.* Our Supreme Court, however, held that this evidence was "insufficient for presentation of the issue of value to the jury." *Id.*

Like in *Holland*, the State presented no evidence as to the monetary value of the victim's vehicle. Moreover, the evidence here was even less robust than that presented by the State in *Holland*. Instead of presenting a picture of the vehicle to the jury, the State in the present case merely relied on the vehicle's partial appearance in the background of police footage to show the car's condition. And, unlike in *Holland*, there was no evidence concerning the victim's care for the vehicle.

Because there was insufficient evidence to prove the underlying felony upon which Defendant was convicted of first-degree murder based on the felony murder rule, we must reverse Defendant's first-degree murder conviction. And based on principles of double jeopardy, Defendant cannot be retried for first-degree murder based on felony murder. *See State v. Callahan*, 83 N.C. App. 323, 325, 350 S.E.2d 128, 129–30 (1986) ("Appellate reversal of a conviction on the basis of insufficiency [of evidence] has the same effect as a judgment of acquittal and the Double Jeopardy Clause precludes retrial."). *See also McDaniel v. Brown*, 558 U.S. 120, 131 (2010)

("Because reversal for insufficiency of the evidence is equivalent to a judgment of acquittal, such a reversal bars a retrial.").

### III.    Instructions on Remand

Regarding the protocol to follow in this situation, Section 15A-1447(c) of our General Statutes states that

> [i]f the appellate court finds that the evidence with regard to a charge is insufficient as a matter of law, the judgment must be reversed and the charge must be dismissed unless there is evidence to support a lesser included offense.  In that case *the court may remand for trial on the lesser offense.*

N.C. Gen. Stat. § 15A-1447(c) (2023) (emphasis added).  However, our Supreme Court has a "long-standing, consistent precedent of acting *ex mero motu* to recognize a verdict of guilty of a crime based upon insufficient evidence as a verdict of guilty of a lesser-included offense." *State v. Stokes*, 367 N.C. 474, 480, 756 S.E.2d 32, 36–37 (2014).

In this case, the jury necessarily found that the victim died while Defendant was committing an unlawful act:  misdemeanor larceny.  *See* N.C. Gen. Stat. § 14-72(a) (2023) (showing that the elements of misdemeanor larceny are identical to the elements of felonious larceny, save for the value requirement).  And involuntary manslaughter can be proven by showing that the defendant killed another "by an unlawful act not amounting to a felony[.]"  *State v. Brichikov*, 383 N.C. 543, 549, 881 S.E.2d 103, 109 (2022).  *See also State v. Lane*, 115 N.C. App. 25, 30, 444 S.E.2d 233,

237 (1994) (holding that North Carolina has not abandoned "the common law doctrine of misdemeanor manslaughter").

Accordingly, based on *Stokes*, we remand with instructions that judgment be entered against Defendant convicting him of involuntary manslaughter (under the theory of misdemeanor manslaughter).

We recognize, though, that this case has an extra wrinkle, in that the jury was instructed on two different theories of murder, each which has different lesser-included offenses, and that the jury did not acquit Defendant of the lesser-included offenses associated with premeditated murder. We also recognize that those lesser-included offenses carry greater punishments than involuntary manslaughter, the lesser-included offense of felony murder.

The district attorney, if (s)he in his/her prosecutorial discretion so chooses, may retry Defendant *under the original bill of indictment* for second-degree murder and voluntary manslaughter, as doing so would not violate the principles of double jeopardy, provided that if (s)he so elects and is able to obtain a conviction, the judgment convicting Defendant of involuntary manslaughter must be arrested.

The verdict sheet indicates that the jury specifically rejected the State's alternate theory for first-degree murder (*i.e.,* that Defendant acted with premeditation and deliberation in causing the victim's death). However, the verdict sheet also included an option by which the jury could have convicted Defendant of second-degree murder and an option by which the jury could have convicted

- 13 -

Defendant of voluntary manslaughter. But since the jury found Defendant guilty of first-degree murder based on the felony-murder rule, the jury never answered whether it believed the State had proven the elements of second-degree murder (*i.e.*, that Defendant killed the victim with malice, though without premeditation and deliberation) or voluntary manslaughter (*i.e.,* that Defendant killed the victim without malice).

A retrial for second-degree murder and/or voluntary manslaughter is one of "continuing jeopardy," as the original indictment in this case embraced second-degree murder and involuntary manslaughter as lesser-included offenses of first-degree premeditated murder and also embraced misdemeanor manslaughter as a lesser-included offense of first-degree felony murder. *See, e.g.*, *State v. Courtney*, 372 N.C. 458, 831 S.E.2d 260 (2019) (discussing the concept of "continuing jeopardy"). And the fact that the jury's verdict supports a conviction of involuntary manslaughter as a lesser-included offense of first-degree felony murder does not prohibit the State from retrying Defendant for crimes that are lesser included offenses of first-degree murder based on premeditation, as the jury was instructed on those offenses but did not return any verdict. Felony murder and premeditated murder involve different elements. There is nothing in the jury's verdict which mandates a conclusion that they found Defendant did not act with malice in causing the victim's death or that he committed voluntary manslaughter, but only that he did not act with premeditation and deliberation.

Any double jeopardy concerns here are like those addressed by the United States Supreme Court in *Ohio v. Johnson*, 467 U.S. 493 (1984). In that case, the Court held that the conviction of a lesser-included offense based on a plea bargain does not bar a trial of the greater-included offenses alleged in the same indictment. *Id.* Rather, the double jeopardy concern would arise in the present case only if Defendant were to be convicted on retrial for second-degree murder or voluntary manslaughter. However, this concern would be easily remedied by the trial court arresting judgment on the involuntary manslaughter conviction. *See also State v. Henning*, 681 N.W.2d 871 (Wis. 2004), and cases cited therein.

We note that a holding that the State not be allowed to retry Defendant under the original indictment where the jury convicts only on one theory of murder could lead to absurd results. For instance, under such a holding, if we had held in this case that there was NO evidence that Defendant stole the vehicle, Defendant would have to be released. In such case, the State would have no opportunity to retry for second degree murder or voluntary manslaughter.

### III. Conclusion

Based on binding Supreme Court precedent, we must reverse Defendant's first-degree murder conviction based on the felony murder rule. On remand, the trial court may enter judgment for involuntary manslaughter, a lesser-included offense.

Also, on remand the State may, in its discretion, retry Defendant for second-degree murder and voluntary manslaughter under the original indictment, as the

jury did not return a verdict as to those charges. The State, however, may not retry Defendant for first-degree murder. Prosecution for first-degree murder based on the felony-murder rule is foreclosed by our holding that the State's evidence was insufficient to prove that crime. The State does not get a second bite at the apple to offer the evidence it failed to offer in the first trial. And prosecution for first-degree murder based on premeditation and deliberation is foreclosed on remand based on the jury's verdict acquitting Defendant of that charge in the first trial.

If, on remand, the State elects to retry Defendant and Defendant is convicted of either second-degree murder or voluntary manslaughter and judgment is entered accordingly, Defendant's conviction for involuntary manslaughter shall be arrested.

REVERSED AND REMANDED.

Judge STADING concurs.

Judge STROUD concurs in part and dissents in part.

STROUD, Judge, concurring in part and dissenting in part.

While I concur with the majority's opinion on the insufficiency of evidence of the value of the car, I write separately to dissent on the issue regarding the verdict sheet and jury instructions. As the trial court's final mandate to the jury did not include a clear instruction that the jury may find Defendant "not guilty" of murder but *did* include this instruction for the lesser offenses the jury did not reach, and the verdict sheet supplied to the jury only included spaces for verdicts entitled "Answer," I would grant Defendant a new trial.

## IV.    Verdict Sheet and Jury Instructions

Defendant argues "the trial court committed plain and reversible error by omitting a 'not guilty' option in the final mandate to the jury and on the verdict sheet." As the majority opinion correctly notes, since Defendant did not object to the jury instructions or proposed verdict sheet at trial, we review this argument for plain error. *See State v. McHone*, 174 N.C. App. 289, 294, 620 S.E.2d 903, 907 (2005) ("Because defendant did not object at trial to the omission of the not guilty option from the trial court's final mandate to the jury, we review the trial court's actions for plain error." (citation omitted)).

"It is well established that the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct." *Id.* (citation and quotation marks omitted). Here, Defendant challenges both the verdict form and the jury instructions, particularly

the absence of the instruction that the jury should find Defendant "not guilty" if the State fails to meet its burden of proof and the lack of designations on the verdict sheet to answer "Guilty" or "Not Guilty" as to each crime submitted to the jury. There is no specific form required for a verdict sheet, but the preferred practice is to require the jury to answer "guilty" or "not guilty" for each crime. *See State v. Hicks*, 86 N.C. App. 36, 43, 356 S.E.2d 595, 599 (1987) ("[A]lthough the verdict sheet utilized by the trial court is not preferred and the use of 'not guilty' on the verdict sheet is preferred we conclude that there is no reasonable possibility that the outcome would have differed if the jury verdict sheet would have been worded differently." (citation omitted)). Further, "[o]ur Supreme Court has held that the failure of the trial court to provide the option of acquittal or not guilty in its charge to the jury can constitute reversible error." *McHone*, 174 N.C. App. at 295, 620 S.E.2d at 907 (citations omitted). However, even where the verdict sheet fails to include an option of "Not Guilty," a guilty verdict can be deemed no error if "[t]he trial court's final mandate to the jury specifically instructs the jury with respect to the permissible verdicts that it could return." *Hicks*, 86 N.C. App. at 43, 356 S.E.2d at 599.

Here, the majority decided the trial court did not commit plain error since the jury instructions explained to the jury it could return a not guilty verdict if it finds the State did not meet its burden. The trial court, in its general instructions on direct versus circumstantial evidence, did instruct "[a]fter weighing all of the evidence, if you are not convinced of the guilt of the Defendant beyond a reasonable doubt, you

2

must find the Defendant not guilty." However, after explaining the elements required for first-degree murder under the theories of premeditation and deliberation or the felony murder rule, the trial court did not include any instruction regarding finding Defendant "not guilty." The trial court instructed:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date that the Defendant, acting with malice, killed the victim with a deadly weapon thereby proximately causing the victim's death, that the Defendant intended to kill the victim and that the Defendant acted after premeditation and with deliberation, it would be your duty to return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation.
>
> If you do not so find or you have a reasonable doubt as to one or more of these things, you would return a verdict of - - *you would not return a verdict of guilty of first degree murder on the basis of malice, premeditation and deliberation.* Whether or not you find the Defendant guilty of first degree murder on the basis of malice, premeditation and deliberation, you would then also consider whether or not the Defendant is guilty of first degree murder under the basis of the first degree Felony Murder Rule.
>
> . . . .
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant took and carried away another person's property without the other person's consent knowing that the Defendant was not entitled to take it and intending at the time to deprive the alleged victim of its use permanently and that the property was worth more than $1,000 and that while committing a larceny the Defendant killed - - killed the victim, and that the Defendant's act was the proximate cause of the victim's death, it would be your duty to return a verdict of guilty of first degree murder under the Felony Murder Rule. If you

3

> do not so find or if you have a reasonable doubt as to one or more of these things, *you will not return a verdict of guilty of first degree murder under the Felony Murder Rule.*

(Emphasis added.)

Thus, as to each theory of first-degree murder, the trial court instructed the jury should either "return a verdict of guilty" or "not return a verdict of guilty." In contrast, for the lesser offenses of second-degree murder and voluntary manslaughter, the trial court specifically instructed the jury that "if you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty[.]" I also note that the wording of the instruction to "not return a verdict of guilty" as to murder was exactly the same in *McHone*, where this Court reversed for plain error based on the combination of the jury instructions and a verdict sheet with no spaces for an answer of "not guilty." *McHone*, 174 N.C. App. at 292, 300, 620 S.E.2d at 906, 911.

The wording of the jury instructions on first-degree murder – without a directive to find Defendant "not guilty" if the jury did not find the elements proven beyond a reasonable doubt – but with the instruction to "not return a verdict of guilty" may be harmless had the verdict sheet clearly directed the jury to find Defendant "Guilty" or "Not Guilty" of each crime, but it did not. The verdict form, with the jury's handwritten answers in italics, read as follows:

> We, the jury, return the unanimous verdict as follows:

> 1. Guilty of First Degree Murder

4

ANSWER: *Yes*

IF YOU ANSWER "YES", IS IT:

A. On the basis of malice, premeditation and deliberation?

ANSWER: *No*

B. Under the first degree felony murder rule?

ANSWER: *Yes*

If you find the Defendant Guilty of First Degree Murder stop here.

2. Guilty of Second Degree Murder

ANSWER: _____

If you find defendant Guilty of Second Degree Murder you must unanimously find one or more of A, B, or C below.

A. Is it malice meaning hatred, ill will, or spite?

ANSWER: _____

B. Is it malice defined as condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict serious bodily harm which proximately results in another's death, without just cause, excuse or justification?

ANSWER: _____

C. Is it malice that arises when an act which is inherently dangerous to human life is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief?

ANSWER: _____

5

If you find the Defendant Guilty of Second Degree Murder stop here.

3. Guilty of Voluntary Manslaughter

ANSWER: _____

Nowhere on the verdict sheet was there a blank to indicate if the jury found Defendant "Not Guilty;" the verdict sheet only had a blank under each charge titled "Answer:[.]"

In *Hicks*, the trial court used a similar verdict sheet without a blank for either "Guilty" or "Not Guilty" but only a blank for "Answer:[.]" *Hicks*, 86 N.C. App. at 43, 356 S.E.2d at 599. However, in *Hicks*, the trial court instructed the jury clearly on how to fill out the verdict sheet, stating "[w]hen all twelve members of the jury agree on a verdict, your foreperson should record *your verdict* on the verdict sheet. There are two counts and *the foreperson should write in 'guilty' or 'not guilty' where the word 'answer' is, and there is a line drawn there*." *Id.* (emphasis in original).

Thus, this Court held there was no error since

> [t]he trial court's final mandate to the jury specifically instructs the jury with respect to the permissible verdicts that it could return. Moreover, *the trial court specifically instructed the jury on how to enter the verdict on the sheet supplied to them by the trial court*. When the jury was polled each juror answered that the verdict returned by the foreperson was his or her verdict and that each still assented thereto.

*Id.* (emphasis added).

6

Here, while the jury was polled after the verdict was issued, the trial court did not instruct the jury on how to properly fill out the verdict form, only stating, "All 12 of you must agree on your verdict. You cannot reach a verdict by majority vote. *When you have agreed upon a unanimous verdict as to each charge or as to the charges, your foreperson should indicate so on the verdict form*." (Emphasis added.) The trial court's instructions did not give the jury any direction it could find Defendant "not guilty" but just to find him guilty or to "not return a verdict of guilty."

This case is more similar to *McHone* than *Hicks*. In *McHone* this Court held the trial court committed plain error in the jury instructions, reversed the murder conviction, and remanded for new trial. *See McHone*, 174 N.C. App. at 300, 620 S.E.2d at 911. In *McHone*, the trial court used substantially similar language to this case in its instructions on first-degree murder and the basis for a guilty verdict based on malice, premeditation and deliberation or the felony murder rule. *See id.* at 297, 620 S.E.2d at 909. This Court stated,

> We first consider the jury instructions on murder in their entirety in determining whether the failure to provide a not guilty mandate constitutes plain error. The trial court judge correctly instructed the jury that if it did not find the requisite malice, premeditation and deliberation, it "would not return a verdict of guilty of first-degree murder on the basis of malice, premeditation, and deliberation" and must then consider whether the killing was done consistent with the requirements of the felony murder rule. Likewise, the concluding portion of the jury instruction on felony murder mirrored the one concerning malice, premeditation and deliberation in that it stated that the jury "would not return a verdict of guilty of first-degree murder under the

felony murder rule" if the State failed in one or more of the elements of felony murder. The instruction, then, in the absence of a final not guilty mandate, essentially pitted one theory of first degree murder against the other, and *impermissibly suggested* that the jury should find that the killing was perpetrated by defendant on the basis of at least one of the theories. Telling the jury "not to return a verdict of guilty" as to each theory of first degree murder does not comport with the necessity of instructing the jury that it *must or would* return a verdict of not guilty should they completely reject the conclusion that defendant committed first degree murder.

Secondly, we consider the content and form of the first degree murder verdict sheet in determining whether the failure to provide a not guilty mandate constitutes plain error. Here, the trial court initially informed the jury that it was their "duty to return one of the following verdicts: guilty of first-degree murder or not guilty." However, the verdict sheet itself did not provide a space or option of "not guilty." And while the content and form of the verdict sheet did not compel the jury to return a verdict of guilty insofar as it stated "if" it found defendant guilty of first degree murder, we repeat our observation that it failed to afford exactly that which the court initially informed the jury it would be authorized to return—a not guilty verdict.

*Id*. at 297-98, 620 S.E.2d at 909 (emphasis in original) (brackets omitted).

In *McHone*, the verdict form did include blanks for "not guilty" for the lesser offenses, although not for murder. Here, the verdict form did not include a "not guilty" blank for any charge, but the jury instructions for the lesser offenses did include the instruction regarding finding the defendant "not guilty" as to those lesser offenses only. The jury instructions here thus have the same effect as the erroneous instructions in *McHone:*

8

> Rather than help correct the failure to provide a similar not guilty mandate with respect to the first degree murder charge, the presence of a not guilty final mandate as to the taking offenses likely reinforced the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder. Likewise, the content and form of the verdict sheet on the taking offenses, which did afford a space for a not guilty verdict, also likely reinforced the suggestion that defendant must have been guilty of first degree murder on some basis[.]

*Id.* at 298, 620 S.E.2d at 909.

*McHone* relied on several North Carolina Supreme Court cases which direct the trial court must explicitly instruct the jury it should return a verdict of "not guilty" if not satisfied by the evidence beyond a reasonable doubt. *See State v. Ramey*, 273 N.C. 325, 329, 160 S.E.2d 56, 59 (1968) ("In our opinion, and we so decide, defendant was entitled to an explicit instruction, even in the absence of a specific request therefor, to the effect the jury should return a verdict of not guilty if the State failed to satisfy them from the evidence beyond a reasonable doubt that a bullet wound inflicted upon Mabry by defendant proximately caused his death. The trial judge inadvertently failed to give such instruction. The necessity for such instruction is not affected by the fact there was plenary evidence upon which the jury could base a finding that a bullet wound inflicted upon Mabry by defendant proximately caused his death." (citation omitted)); *see also State v. Overman*, 257 N.C. 464, 468, 125 S.E.2d 920, 924 (1962) ("Furthermore, when the trial judge undertook to apply the law to the evidence with reference to the first count, he told the jury that if they were

satisfied beyond a reasonable doubt that the stated hypotheses were the facts it would be their duty to return a verdict of guilty as charged. However, he failed to give the converse or alternative view and to tell the jury that if they were not satisfied beyond a reasonable doubt that those were the facts, they would acquit the defendant. This likewise was error. In his mandate with reference to the second count, he did give the alternative instruction." (citation omitted)). The Supreme Court cases also make it clear this error requires a new trial even if the defendant did not object to the instructions, despite "plenary evidence" the jury could base a verdict of guilt upon. *See id*.

Finally, the majority relies on *State v. Gosnell* to assert the jury instructions are sufficient since the trial court gave a proper instruction in the lesser-included charges of second-degree murder and voluntary manslaughter, despite not doing so in the instructions for first-degree murder.  231 N.C. App 106, 750 S.E.2d 593 (2013). However, the majority recognizes *Gosnell* is distinguishable from this case as the verdict sheet in *Gosnell* included an option for "not guilty" but the verdict sheet here did not. *Id*. at 109, 750 S.E.2d at 595.  The court in *Gosnell* also considered how the verdict sheet and instructions differed from *McHone*, as *Gosnell* noted the trial court gave proper instructions for lying in wait and second-degree murder and provided spaces to indicate "not guilty" on the verdict sheet:

> This Court in *McHone* considered the instructions and verdict sheet for the other offenses with which the defendant was charged.

10

Rather than help correct the failure to provide a similar not guilty mandate with respect to the first degree murder charge, the presence of a not guilty final mandate as to the taking offenses likely *reinforced* the suggestion that the jury should return a verdict of first degree murder based upon premeditation and deliberation and/or felony murder.

Additionally, this Court noted that the verdict sheet for the other offenses, which did afford a space for a not guilty verdict, also likely *reinforced* the suggestion that the defendant must have been guilty of first degree murder on some basis.

In the present case, there are no other offenses to analyze in the course of our plain error review. *The verdict sheet provided a space for a "not guilty" verdict, and the trial court's instructions on second-degree murder and the theory of lying in wait comported with the requirement in McHone.*

*Id*. at 110, 750 S.E.2d at 596 (citations, quotation marks, and brackets omitted).

This case does not "comport with the requirement in *McHone*." *Id.* Here, the verdict sheet, combined with the jury instructions, makes this case rise to the level of plain error, since the verdict sheet "failed to afford exactly that which the court initially informed the jury it would be authorized to return—a not guilty verdict." *McHone*, 174 N.C. App. at 298, 620 S.E.2d at 909. Here, the trial court also gave the proper instruction for the jury to find Defendant "not guilty" as to the lesser offenses while not using this language for first degree murder. *McHone* involved a verdict sheet which included options for "guilty" or "not guilty" in the lesser-included charges but not for the greater offenses, so this case is still so similar to *McHone* to require a new trial. *See id.*

11

The majority also notes that the trial court gave the jury a "jury pack" of the instructions to use during deliberations. This is correct, but the jury pack simply included the same jury instructions I would find to be in error. Giving the jury erroneous instructions in written form would be more likely to reinforce the effect of the erroneous instruction than to ameliorate it.

I would hold the instructions and verdict sheet require a new trial since the instructions and the jury verdict sheet did not direct the jury to find Defendant "not guilty" of each theory of murder if not convinced beyond a reasonable doubt of guilt. These errors, combined with the trial court's proper instructions to the jury regarding a verdict of "not guilty" as to second-degree murder and voluntary manslaughter, create a situation similar to *McHone*, where "the trial court's inadvertent omission tipped the scales of justice in favor of conviction and *impermissibly suggested* that the defendant must have been guilty of first degree murder on some basis." *Id*. at 299, 620 S.E.2d at 910 (emphasis in original).

## V. Instructions on Remand

As noted above, I concur with the majority in its holding that the State presented insufficient evidence of the value of the Suzuki car, and thus the conviction of first-degree murder under the felony murder rule based on felony larceny must be reversed. This is unfortunate, since it is obvious the 2012 Suzuki Vitara was worth more than $1,000.00. The car was in good condition based on the photographs in evidence and was operational, based on Defendant's driving it to Chapel Hill where

it was found. In addition, at trial the State argued the jury could find the $1,000.00 value for the items stolen by Defendant including the cell phone, flat screen television, *and* the Suzuki. But the State presented no evidence whatsoever of the values of these items, and the jury instructions directed the jury to consider only the value of the Suzuki for purposes of felony larceny.

Although I concur on the holding as to felony murder based on felony larceny, I dissent as to the majority opinion's "instructions on remand." Although the majority mentions the discretion of the prosecutor, the language of the opinion seeks to control that discretion. Essentially, the majority issues a mandate that infringes upon the prosecutorial discretion granted to the District Attorney by the North Carolina Constitution. *See* N.C. Const. art. IV, § 18 ("The District Attorney shall advise the officers of justice in his district, be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe."). As to the felony murder conviction, the proper action for the majority would be governed by North Carolina General Statute Section 15A-1447(c):

> If the appellate court finds that the evidence with regard to a charge is insufficient as a matter of law, the judgment must be reversed and the charge must be dismissed unless there is evidence to support a lesser included offense. *In that case the court may remand for trial on the lesser offense.*

N.C. Gen. Stat. § 15A-1447(c) (2023) (emphasis added).

But because I would also hold the trial court erred in the jury verdict form and instructions as to how the jury should address the issues on the verdict form, I would simply grant a new trial on the charges of second-degree murder and voluntary manslaughter, as directed by North Carolina General Statute Section 15A-1447(a): "If the appellate court finds that there has been reversible error which denied the defendant a fair trial conducted in accordance with law, it must grant the defendant a new trial." N.C. Gen. Stat. § 15A-1447(a) (2023).

Although the jury found Defendant not guilty of first-degree murder based on premeditation and deliberation, it did not address second-degree murder or voluntary manslaughter. Based on the jury instructions and verdict sheet, Defendant was not found guilty or not guilty of these charges, but the State presented substantial evidence which would allow a properly instructed jury to find Defendant guilty of these charges. Therefore, a new trial on these charges is appropriate. *See Burks v. United States*, 437 U.S. 1, 15-16, 57 L. Ed. 2d 1, 12 (1978) ("In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the

accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." (citation omitted)).

The majority opinion has crafted directions on remand not just for the trial court but also for the District Attorney. I can find no case in which this Court or the North Carolina Supreme Court has found error in a conviction and has remanded with specific directives to the District Attorney about how to proceed on remand and including alternative instructions to the trial court and District Attorney. The majority recognizes that its holding on the sufficiency of the evidence as to first-degree murder under the felony murder rule, combined with its holding of no error as to the issues regarding the jury verdict form and instruction, creates a difficult dilemma for the State in a case where a woman was brutally killed and the evidence clearly indicates Defendant killed her, even if the specific type of homicide is less clear. This is a hard case, but we must "bear in mind Lord Campbell's caution: 'Hard cases must not make bad law.'" *Congleton v. City of Asheboro*, 8 N.C. App. 571, 574, 174 S.E.2d 870, 872 (1970). I believe issuing directives to the District Attorney is bad law. If the majority has determined it should "remand with instructions that

judgment be entered against Defendant convicting him of involuntary manslaughter," it should so order.

As best I can tell, this sort of directive to the District Attorney is novel. This Court has the authority to reverse and to issue a mandate to the *trial court* as to how to proceed on remand, and all parties to a case are limited by the law of the case as set out in any appellate opinion before remand. As an appellate court, we have very limited information about this case and no information of any current circumstances which may affect any new trial or any other proceedings on remand. For example, witnesses from the trial may become unavailable, or new witnesses may be discovered. New evidence may be discovered and presented. These changes may benefit either the State or Defendant, but this Court's duty is to issue a clear mandate to the trial court in accord with its holdings on appeal as directed by North Carolina General Statute Section 15A-1447. *See* N.C. Gen. Stat. § 15A-1447 (2023). I concur with the majority to reverse the first-degree felony murder charge based on insufficiency of evidence, but I would otherwise reverse for error in the jury instructions and verdict sheet and remand to the trial court for new trial, with the State free to proceed on remand as the District Attorney deems appropriate in the exercise of her discretion.

## VI.    Conclusion

I respectfully concur in part and dissent in part and would grant Defendant a new trial.

16